19 A.3d 381

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

John Joseph ZODROW.

Misc. Docket AG No. 40, Sept. Term, 2009.

Court of Appeals of Maryland.

April 27, 2011.

Glenn M. Grossman, Bar Counsel (Attorney Grievance Commission of Maryland), for Petitioner.

No Argument on Behalf of the Respondent.

Submitted to: BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

BARBERA, J.

This reciprocal discipline action arises out of a disciplinary proceeding initiated in Colorado against Respondent, attorney John Joseph Zodrow.[1] On June 10, 2009, Respondent was suspended from the practice of law in Colorado for one year and one day, following the Colorado Supreme Court's acceptance of Respondent's "Conditional Admission of Misconduct," [2] whereby Respondent admitted under oath that he had

---

1. Respondent was admitted to the Bar of this Court on January 6, 1994. The record before this Court does not indicate whether Respondent has practiced law in Maryland following his admission.

2. Colorado Rule of Civil Procedure ("C.R.C.P.") 251.22, entitled "Discipline Based on Admitted Misconduct," provides in relevant part:

(a) Acceptance of Admission. An attorney against whom proceedings are pending pursuant to these Rules may, at any point in the proceedings prior to final action by a Hearing Board, tender a conditional admission of misconduct constituting grounds for discipline in exchange for a stipulated form of discipline. The conditional admission must be approved by the Regulation Counsel prior to being tendered to the committee or the Presiding Disciplinary Judge.

\*    \*    \*

If the form of discipline stipulated to is disbarment, suspension, public censure, or a range that includes any of the former and private admonition, the conditional admission shall be tendered to the Presiding Disciplinary Judge for review. The Presiding Disciplinary

engaged in conduct that violated Colorado Rules of Profession-
al Conduct 3.3(a)(1),[3] 3.4(c),[4] and 8.4(c).[5]

---

Judge or Presiding Officer of the Hearing Board shall, after conduct-
ing a hearing as provided in this Rule, if one is requested, either
reject the conditional admission and order the proceedings continued
in accordance with these Rules, or approve the conditional admission
and enter an appropriate order.

Imposition of discipline pursuant to a conditional admission of mis-
conduct shall terminate all proceedings conducted pursuant to these
Rules and pending against the attorney in connection with that
misconduct.

(b) Conditional Admission—Contents.  A conditional admission of
misconduct shall be set forth in the form of an affidavit, be submitted
by the attorney, and shall contain:

(1) An admission of misconduct which constitutes grounds for disci-
pline;

(2) An acknowledgment of the proceedings pending against the attor-
ney; and

(3) A statement that the admission is freely and voluntarily made,
that it is not the product of coercion or duress, and that the attorney
is fully aware of the implications of the attorney's admission.

\*        \*        \*

(e) Further Proceedings.  If the conditional admission of misconduct
is rejected and the matter is returned for further proceedings consis-
tent with these Rules, the conditional admission may not be used
against the attorney.

3. Colorado Rule of Professional Conduct (Colo.RPC) 3.3 (Candor To-
ward the Tribunal) provides in relevant part:

(a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal or fail
to correct a false statement of material fact or law previously made to
the tribunal by the lawyer;

4. Colo. RPC 3.4 (Fairness to Opposing Party and Counsel) provides in
relevant part:

A lawyer shall not:

\*        \*        \*

(c) knowingly disobey an obligation under the rules of a tribunal
except for an open refusal based on an assertion that no valid
obligation exists;

5. Colo. RPC 8.4 (Misconduct) provides in relevant part:

It is professional misconduct for a lawyer to:

\*        \*        \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepre-
sentation;

On October 1, 2009, the Attorney Grievance Commission ("Petitioner"), acting through Bar Counsel, filed a Petition for Disciplinary Action or Remedial Action against Respondent. *See* Maryland Rules 16–773 [6]; 16–751 (stating that, "[u]pon

---

**6.** Maryland Rule 16–773 (Reciprocal discipline or inactive status) provides:

(a) **Duty of attorney.** An attorney who in another jurisdiction (1) is disbarred, suspended, or otherwise disciplined, (2) resigns from the bar while disciplinary or remedial action is threatened or pending in that jurisdiction, or (3) is placed on inactive status based on incapacity shall inform Bar Counsel promptly of the discipline, resignation, or inactive status.

(b) **Petition in Court of Appeals.** Upon receiving and verifying information from any source that in another jurisdiction an attorney has been disciplined or placed on inactive status based on incapacity, Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751(a)(2). A certified copy of the disciplinary or remedial order shall be attached to the Petition, and a copy of the Petition and order shall be served on the attorney in accordance with Rule 16–753.

(c) **Show cause order.** When a petition and certified copy of a disciplinary or remedial order have been filed, the Court of Appeals shall order that Bar Counsel and the attorney, within 15 days from the date of the order, show cause in writing based upon any of the grounds set forth in section (e) of this Rule why corresponding discipline or inactive status should not be imposed.

(d) **Temporary suspension of attorney.** When the petition and disciplinary or remedial order demonstrate that an attorney has been disbarred or is currently suspended from practice by final order of a court in another jurisdiction, the Court of Appeals may enter an order, effective immediately, suspending the attorney from the practice of law, pending further order of Court. The provisions of Rule 16–760 apply to an order suspending an attorney under this section.

(e) **Exceptional circumstances.** Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:

(1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;

(2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;

(3) the imposition of corresponding discipline would result in grave injustice;

(4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or

(5) the reason for inactive status no longer exists.

(f) **Action by Court of Appeals.** Upon consideration of the [P]etition and any answer to the order to show cause, the Court of Appeals

approval of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals"). Attached to the Petition were a certified copy of the Colorado Supreme Court's disciplinary order and the "Stipulation, Agreement, and Affidavit Containing the Respondent's Conditional Admission of Misconduct." Pursuant to the disciplinary order, the Colorado Supreme Court approved Respondent's "Stipulation, Agreement and Affidavit Containing the Respondent's Conditional Admission of Misconduct," by which Respondent affirmed under oath, and the Colorado Supreme Court accepted, that the "following facts and conclusions are true and correct:"

## Real Estate Transaction

a. In Spring 2005, respondent decided to purchase a condominium from the father of a friend. The condominium was located at 10680 W. 63rd Ave., Arvada, CO 80004 (hereinafter referred to as the "Arvada property"). The sellers were Clifford and Daisy Whitehill. The parties agreed on a purchase price of approximately $156,000.

b. Respondent executed a promissory note in the face amount of $136,062.08, dated April 30, 2005. The note

may immediately impose corresponding discipline or inactive status, may enter an order designating a judge pursuant to Rule 16–752 to hold a hearing in accordance with Rule 16–757, or may enter any other appropriate order. The provisions of Rule 16–760 apply to an order under this section that disbars or suspends an attorney or that places the attorney on inactive status.

(g) **Conclusive effect of adjudication.** Except as provided in subsections (e)(1) and (e)(2) of this Rule, a final adjudication in a disciplinary or remedial proceeding by another court, agency, or tribunal that an attorney has been guilty of professional misconduct or is incapacitated is conclusive evidence of that misconduct or incapacity in any proceeding under this Chapter. The introduction of such evidence does not preclude the Commission or Bar Counsel from introducing additional evidence or preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed.

(h) **Effect of stay in other jurisdiction.** If the other jurisdiction has stayed the discipline or inactive status, any proceedings under this Rule shall be deferred until the stay is no longer operative and the discipline or inactive status becomes effective.

obligated respondent to pay Clifford Whitehill monthly payments of $1,079.51 commencing May 1, 2005. The note stated that it was secured by a deed of trust dated June 30, 2005 for the Arvada property.

c. Respondent also executed a Quitclaim Deed transferring his rights in the Arvada property to his long-time friend and legal assistant, Susan K. Boyer ("Boyer"). The Quitclaim Deed was dated April 30, 2005.

d. Boyer executed a Bill of Sale, also dated April 30, 2005. In the Bill of Sale, Boyer agreed to assume respondent's obligations related to the Arvada property. Boyer did not provide respondent any security for her agreement to assume respondent's obligations.

e. Respondent did not inform Mr. Whitehill that he had quitclaimed his interested in the Arvada property to Boyer or that Boyer had agreed to assume respondent's obligations under the promissory note.

f. Respondent executed a Deed of Trust, dated June 30, 2005. By the Deed of Trust, respondent conveyed the Arvada property to the Jefferson County Public Trustee along with a power of sale, to be exercised for the benefit of Mr. Whitehill to secure respondent's indebtedness under the promissory note. In the Deed of Trust, respondent warranted that he owned the Arvada property.

g. Mr. Whitehill—who lives in Florida—understood that respondent would be recording the Deed of Trust. Respondent did not do so. Respondent claims that he mailed the Deed of Trust to Mr. Whitehill and that Mr. Whitehill did not return it to respondent. However, respondent did not follow up to ensure the Deed of Trust was recorded.

h. In consideration of respondent's promissory note, secured by the Deed of Trust, and an additional payment of $20,000 (discussed below), Clifford L. Whitehill and Daisy M. Whitehill executed a Warranty Deed dated June 30, 2005, conveying the Arvada property to respondent for $156,062.08. The Whitehills executed the Warranty Deed on July 25, 2005.

i. The Whitehills sent the Warranty Deed to respondent with the understanding that he would record it. Respondent did not do so. Respondent claims that he did not receive the Warranty Deed from Mr. Whitehill. Respondent did not follow up with the Whitehills to learn what had happened to the Warranty Deed.

j. In late June and early July 2005, Boyer issued several checks to Mr. Whitehill. The memos of the checks indicate that they are intended to be monthly payments on the promissory note.

k. As the down payment for respondent's purchase of the Arvada property (the difference between the sale price and the face amount of the promissory note), Boyer issued a check for $20,366.68 to Mr. Whitehill. The check was dated July 30, 2005. The check was returned for insufficient funds. Respondent (and Boyer) failed to timely cure this default.

l. On November 8, 2005, Mr. Whitehill filed suit against respondent. [ ] (the "civil litigation"). Mr. Whitehill requested judgment against respondent in the amounts due under the note, and for rescission of the sale of the Arvada property.

m. During September 2005, Boyer made additional payments to Mr. Whitehill to satisfy respondent's monthly obligations on the promissory note. In late November and early December, Boyer made three additional payments. On December 22, 2005, Mr. Whitehill's counsel returned these checks to respondent. Mr. Whitehill was unwilling to accept Boyer's payments as a partial cure of the deficiency that had resulted from Boyer's tendering an insufficient-funds check for the down payment.

n. On January 5, 2006, the Whitehills filed an amended complaint in the civil litigation, seeking relief based on breach of contract and under the forcible entry and detainer statute. The Whitehills continued to seek damages and rescission of the sale.

o. On or about January 6, 2006, respondent caused his law firm, Zodrow *et al., P.C.,* to loan $99,000 to Boyer. Boyer did not provide any security for the loan to Zodrow *et al.,* P.C. Boyer transferred $99,000 from the Zodrow *et al.,* P.C. payroll account to purchase an Official Check, payable in that amount to Mr. Whitehill. The memo line of the check referenced "Zodrow, P.C."

p. Respondent mailed to Mr. Whitehill a cashier's check in the amount of $20,740.42. The purpose of this check was to cure the breach of contract occasioned by Boyer's issuing an insufficient funds check for the down payment. Respondent also sent the $99,000 Official Check to Mr. Whitehill as a pre-payment on the balance of the promissory note.

q. On June 17, 2008, the court in the civil litigation gave respondent 75 days to cure his defaults in monthly payments and to pay other relevant expenses. Boyer recently paid Mr. Whitehill the redemption amount, approximately $66,000. Boyer obtained these funds from respondent. Mr. Whitehill transferred title to the Arvada property to respondent.

### Bankruptcy Case

r. In 2003, respondent was sued for malpractice by a number of former clients. [ ] (the "malpractice case"). The Honorable Herbert L. Stern III issued an Order entering default and imposing sanctions on July 13, 2004. The issue of damages was reserved for a later hearing.

s. Late in the afternoon of September 1, 2005, respondent attempted to file a personal bankruptcy. Respondent appeared at the bankruptcy clerk's counter, tendered bankruptcy pleadings, and paid a filing fee. Respondent received a date-stamped copy of his bankruptcy petition.

t. After respondent had left the counter, the clerk reviewed the pleadings respondent had filed. Respondent had failed to include in his filing a form that stated his Social Security number. Without this form, the bankruptcy clerk was unable to open a case.

u. The clerk called respondent's office and informed respondent's staff that respondent needed to file the missing form. Respondent's office promised that he would file the required form the next day. The bankruptcy court never got the form.

v. Instead, on September 2, 2005, respondent appeared at a hearing on attorney's fees in the malpractice case, over which the Honorable Robert S. Hyatt was now presiding. Respondent displayed the bankruptcy petition date-stamped September 1, 2005. Based on respondent's representation that he had filed a personal bankruptcy, Judge Hyatt stayed further proceedings in the malpractice case pending briefing.

w. The bankruptcy court clerk held respondent's bankruptcy proceeding pleadings for a week after September 1, 2005, to allow respondent to supply the missing form. When the bankruptcy [court] did not receive the form, the clerk returned the pleadings to respondent.

x. When they did not receive any notices from the bankruptcy court concerning respondent's purported bankruptcy filing, plaintiffs' counsel in the malpractice case requested the bankruptcy clerk to search for the court's records. The clerk informed plaintiffs' counsel that no bankruptcy case existed.

y. On December 30, 2005, respondent filed a Chapter 7 bankruptcy. [ ] (the "bankruptcy case"). On his Schedules, respondent listed assets of $167,500 and debts of $2,089,000.

z. Many of the debts respondent listed had been incurred by Zodrow *et al.*, P.C. Respondent listed these debts because he had personally guaranteed them or because he was otherwise personally obligated, *e.g.*, for unpaid payroll taxes. The amount of these law firm-related debts was in the $100,000's.

aa. Although the Whitehills had signed the Warranty Deed and sent it to him during [the summer of] 2005, respondent did not disclose the Arvada property as an asset on his Schedules. Respondent claimed not to hold any equitable

interest in real property or contingent or unliquidated claims of any nature.

bb. Although he had executed the Deed of Trust at the end of June 2005, respondent did not list Mr. Whitehill as a secured creditor on his Schedules. Nor did respondent list the Whitehills as unsecured creditors. Nor did he list his purchase of the Arvada property as an executory contract. Respondent did not list his monthly payment due under the promissory note among his monthly expenses. Respondent did not disclose the civil litigation on his Statement of Financial Affairs. Respondent did not provide the Whitehills with notice of his bankruptcy.

cc. Respondent also did not disclose in the bankruptcy case his transfer of the Arvada property to Boyer or Boyer's agreement to assume respondent's obligations to Mr. Whitehill under the promissory note.

dd. On January 4, 2006, after receiving notice of the Chapter 7 bankruptcy case, Judge Hyatt held a hearing in the malpractice case. Judge Hyatt told respondent that it appeared he had lied to the court. Respondent asserted that after he filed the bankruptcy petition in early September, he understood that the bankruptcy case was proceeding. He claimed he did not learn that the bankruptcy case had not been opened until he was so informed by plaintiffs' counsel in the malpractice case.

ee. Apparently suspicious of respondent's explanation, Judge Hyatt ordered respondent to produce to the court and plaintiffs' counsel documents that would demonstrate that the first bankruptcy case had been pending since September 2005. Respondent produced only a date-stamped copy of the petition that he had filed on September 1, 2005. Respondent alleged that the bankruptcy court retained the original petition and allied pleadings. Respondent was unable to produce any of the pleadings, notices and communications with creditors typical of a bankruptcy case.

ff. On January 25, 2006, respondent appeared before the Chapter 7 trustee for the creditors' meeting in the bank-

ruptcy case. Malpractice plaintiffs' counsel also attended. Respondent testified under oath that he had declared all of his assets and debts on his Schedules. This testimony was false. As noted above, respondent did not disclose his interest in the Arvada property and his monthly obligation under the promissory note.

gg. Respondent testified that his firm, Zodrow *et al.*, P.C. had dissolved on or about October 1, 2005. Respondent told the trustee that he was now practicing as a sole practitioner. Respondent testified that he had no money in his law office, which was now closed. Respondent stated that he had not collected any money from anyone since September 2005. Respondent testified that his COLTAF account contained approximately $25,000 in client funds, but that only a small portion, if any, was due to him.

hh. Some of respondent's testimony as discussed in ¶ gg was false or incomplete. Respondent's law firm had received $100,000's in the last quarter of 2005. Respondent did not tell the trustee that, in late December 2005, Zodrow *et al.*, P.C. had received a check from the U.S. Postal Service for $99,000. Respondent also did not reveal to the trustee that Zodrow *et al.*, P.C. had made a $99,000 unsecured loan to Boyer on January 6, 2006, just a few weeks before the creditors' meeting.

ii. On February 7, 2006, Judge Hyatt entered sanctions in the malpractice case against respondent's firm in the amount of $34,870.90. Judge Hyatt also awarded to plaintiffs' counsel their fees expended in response to various motions and directed plaintiffs' counsel to submit documentation of their fees incurred. Judge Hyatt stated: "The defendants have not genuinely contested any of the sanction amounts previously entered and have, instead, engaged in a further course of delay, obfuscation and deceit designed to thwart the orders of this court." The delay included that caused by respondent's abortive bankruptcy filing in September 2005.

jj. Because of a change in the law, respondent should have undergone debt counseling prior to filing bankruptcy. Re-

spondent had not done this. As a result, the bankruptcy case was dismissed in Spring 2006.

kk. On April 14, 2006, Judge Hyatt amended his Order of February 7, 2006 to apply the sanctions against respondent individually, as well as his firm.

ll. Through the respondent's conduct described above, the respondent has engaged in conduct constituting grounds for the imposition of discipline pursuant to C.R.C.P. 251.5. *The respondent has also violated Colo. RPC 3.3(a)(1), 8.4(c), and 3.4(c).*

(Emphasis added.)

Bar Counsel alleged that, based on Respondent's admissions of misconduct, Respondent violated Maryland Rules of Professional Conduct ("MRPC") 3.3(a)(1) (Candor Toward the Tribunal),[7] 3.4(c) (Fairness to Opposing Party and Counsel),[8] and 8.4 sections (a), (b), (c), and (d) (Misconduct),[9] all of which are identical to their Colorado counterparts.

---

**7.** MRPC 3.3 provides in relevant part:
    (a) A lawyer shall not knowingly:
    (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

**8.** Rule 3.4, provides in relevant part:
    A lawyer shall not:
*     *     *
    (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

**9.** Rule 8.4 provides in relevant part:
    It is professional misconduct for a lawyer to:
    (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
    (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
    (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
    (d) engage in conduct that is prejudicial to the administration of justice;

Pursuant to Maryland Rules 16–773 and 16–752, we designated the Honorable Laura S. Kiessling of the Circuit Court for Anne Arundel County to hear the matter and make findings of fact and conclusions of law in accordance with Maryland Rule 16–757. Judge Kiessling held a hearing on November 8, 2010, and issued written findings of fact and conclusions of law on November 17, 2010.

## I.

■ Following the November 8, 2010 hearing, at which Respondent failed to appear, Judge Kiessling found, based on the "Stipulation, Agreement and Affidavit Containing the Respondent's Conditional Admission of Misconduct," *supra,* that the following facts were established by clear and convincing evidence.

On or about June 10, 2009, the Respondent was suspended from the practice of law in Colorado, effective August 15, 2009, by order of the Colorado Supreme Court; Hon. William R. Lucero, Presiding Disciplinary Judge. Said suspension was for a year and a day with conditions for reinstatement which included the resolution of fee awards entered against him in a legal malpractice case. The Court's Order Approving Conditional Admission of Misconduct and Imposing Sanctions Pursuant to C.R.C.P. 251.22 stated that the stipulation of the parties is "accepted and approved."

The Respondent affirmed, under oath, that the facts and conclusions set forth in the Stipulation, Agreement and Affidavit containing the Respondent's Conditional Admission of Misconduct are true and correct. The Respondent thereby admitted, *inter alia,* that he failed to make pertinent disclosures during his personal bankruptcy proceeding and that he had given false testimony in that case. Specifically, [Respondent] stated that he had declared all his assets and debts on his schedule. However, he has failed to declare his interest in property and his monthly obligations were not disclosed. Additionally, [Respondent] testified in a false and misleading manner concerning his law firm's receipt of funds in the last quarter of 2005. Furthermore, he

failed to alert the bankruptcy trustee that he had made an unsecured loan to his friend, Susan K. Boyer.

Based on those findings, Judge Kiessling came to the following legal conclusions:

At a hearing on a petition filed by the AGC pursuant to Md. Rule 16–757, the AGC has the burden of proving, by clear and convincing evidence, the averments of the petition. A respondent attorney must only establish an affirmative defense or a matter of mitigation or extenuation by a preponderance of the evidence. Md. Rule 16–757(b).

The AGC has charged that [Respondent] engaged in professional misconduct by violating the following Maryland Rules of Professional Conduct: Rules 3.3,[ ] 3.4,[ ] and 8.4.[ ]

The Court finds that the AGC has established by clear and convincing evidence that [Respondent] violated Rules 3.3, 3.4[,] and 8.4 when he failed to make pertinent disclosures during his personal bankruptcy proceeding and when he gave false testimony in that case. [Respondent's] actions in that case violated his duty of honesty and full disclosure to the courts. Furthermore, he violated his duty to obey the rules of the tribunal.[10]

Neither Respondent nor Bar Counsel has filed exceptions to the hearing judge's factual findings and conclusions of law.

Though not directly stated in her findings, it is obvious that Judge Kiessling proceeded pursuant to Maryland Rule 16–773(g). That rule states in pertinent part that "a final adjudication in a disciplinary or remedial proceeding by another court, agency, or tribunal that an attorney has been guilty of professional misconduct or is incapacitated is conclusive evidence of that misconduct or incapacity in any proceeding under this Chapter." Md. Rule 16–773(g); *see also Attorney Grievance Comm'n v. Whitehead,* 390 Md. 663, 669, 890 A.2d 751, 755 (2006) (adopting, pursuant to Maryland Rule 16–773, the District of Columbia Court of Appeals' finding that an attorney had violated rules of professional misconduct). In

---

**10.** Citations to exhibits are omitted.

accordance with that Rule and consistent with the hearing judge's findings, we defer to the Colorado Supreme Court's Order Approving Conditional Admission of Misconduct and Imposing Sanctions Pursuant to C.R.C.P. 251.22 and therefore accept Respondent's admissions therein that he violated the rules of professional misconduct.[11] Specifically, in connection with Respondent's personal bankruptcy proceeding, Respondent admitted that he knowingly failed to make pertinent disclosures (*i.e.*, his interest in real property and related transactions) and testified falsely (*i.e.*, that his law firm had received only $25,000 since 2005, when in fact it had also received a $99,000 settlement check). By so doing, Respondent necessarily admitted his violations of MRPC 3.3(a)(1), 3.4(c), and 8.4.

## II.

We are left to determine the appropriate sanction for Respondent's misconduct. We have mentioned that the Colorado Supreme Court suspended Respondent from the practice of law for a period of one year and a day, with

---

**11.** We have noted the failure of Respondent to file exceptions to the hearing judge's finding that Respondent admitted his violations of the Colo. RPC, thereby admitting the violations of our counterpart rules. Respondent, though, did file a "Motion to Strike [Bar Counsel's] Response to Show Cause Order," claiming that his admissions of misconduct contained within the "Conditional Admission of Misconduct" were merely conditional and thus not conclusive evidence of misconduct for purposes of the disciplinary proceeding before this Court. Putting aside Respondent's failure to file exceptions on this point, the plain language of C.R.C.P. 251.22 belies Respondent's argument. As indicated by section (a) of that provision, Respondent's admission of misconduct is no longer conditional because it was accepted by the "Presiding Disciplinary Judge." Section (c) of that provision explains why: "If the conditional admission of misconduct is rejected ... the conditional admission may not be used against the attorney." Viewing sections (a) and (c) together, and each in light of the other, it is plain that Respondent's "Conditional Admission of Misconduct" would have remained merely conditional (*i.e.*, not an actual admission of misconduct) only if rejected by the Presiding Disciplinary Judge, the Honorable William R. Lucero. Because Respondent's "Conditional Admission of Misconduct" was "accepted and approved," Respondent's *conditional* admissions of misconduct became *actual* admissions and thus "conclusive evidence of that misconduct" under Maryland Rule 16–773(g).

conditions for reinstatement. When deciding the appropriate sanction in a reciprocal discipline proceeding, this Court is " 'inclined, but not required, to impose the same sanction as that imposed by the state in which the misconduct occurred. We are required to assess for ourselves the propriety of the sanction imposed by the other jurisdiction and that recommended by [Bar Counsel].' " *Attorney Grievance Comm'n v. Weiss*, 389 Md. 531, 546, 886 A.2d 606, 615 (2005) (quoting *Attorney Grievance Comm'n v. Scroggs*, 387 Md. 238, 254, 874 A.2d 985, 995 (2005)). In other words, we are "duty-bound to examine the other jurisdiction's sanction and determine whether that sanction is consistent with our disciplinary precedent." *Whitehead*, 390 Md. at 683, 890 A.2d at 763. In that regard, Maryland Rule 16–773(e)(4) provides that this Court shall not impose the same sanction as that of the state in which the reciprocal action arose if "the conduct established . . . warrants substantially different discipline in this State." The purpose of that Rule is to ensure that all attorneys of this Bar are subject to similar sanctions for similar misconduct, regardless of whether the misconduct takes place in this State or another jurisdiction. *See Attorney Grievance Comm'n v. Sperling*, 380 Md. 180, 191, 844 A.2d 397, 404 (2004) (stating "the public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated" (citation omitted)).

This Court explained in *Whitehead* that the "most reasonable way" to decide whether to impose a sanction different from that imposed in the other jurisdiction is "to review our own cases and determine which sanction would have been adequate had the case originated in this State." 390 Md. at 671, 890 A.2d at 756; *see also Attorney Grievance Comm'n v. Gordon*, 413 Md. 46, 56, 991 A.2d 51, 57 (2010) ("[W]e are concerned with what sanction a lawyer in Maryland could expect in response to similar conduct, were it to have occurred in Maryland."). Bar Counsel argues that imposing suspension under the circumstances of this case, as did the Colorado Supreme Court, would be inconsistent with Maryland law. In

Bar Counsel's view, the law of this State mandates disbarment. We conclude, for the reasons that follow, that "our cases demonstrate that we would apply a different sanction, had the conduct occurred or the case originated here," *Gordon,* 413 Md. at 57, 991 A.2d at 57, and we agree with Bar Counsel that disbarment, rather than suspension, is the appropriate sanction.

### III.

In assessing Respondent's misconduct, we must start with the purpose of disciplinary proceedings. That purpose is,

> not to punish the lawyer, but to protect the public and the public's confidence in the legal profession. We protect the public through sanctions against offending attorneys in two ways: through deterrence of the type of conduct which will not be tolerated, and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State. The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations. . . .

*Attorney Grievance Comm'n v. Sucklal,* 418 Md. 1, 10 n. 3, 12 A.3d 650, 655 n. 3 (2011) (internal quotation marks and citation omitted). Respondent, pursuant to his "Stipulation, Agreement and Affidavit Containing the Respondent's Conditional Admission of Misconduct," admitted, under oath, to conduct violating MRPC 3.3, 3.4, and 8.4. Specifically, Respondent, during his personal bankruptcy proceeding, knowingly testified falsely that his law firm had only received $25,000 during the period of September 2005 to January 25, 2006, when, in fact, the firm had received a $99,000 check in late December of 2005.[12] Moreover, Respondent knowingly failed to disclose his

---

12. In addition to the attorney discipline consequences of that false testimony, Respondent was charged with and pleaded guilty on August 11, 2010 to one count of knowingly and fraudulently making a false oath and account in relation to a Bankruptcy Petition, in violation of 18 U.S.C. § 152(2).

interest in real property and the related financial arrangements, which he was required to do by law.

Respondent's conduct "involv[ed] dishonesty, fraud, or deceit, [which] carr[ies] the risk of the ultimate sanction by this Court." *Attorney Grievance Comm'n v. White*, 354 Md. 346, 366, 731 A.2d 447, 458 (1999). "[W]e have held that disbarment follows as a matter of course 'when a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling extenuating circumstances....'" *Attorney Grievance Comm'n v. Guberman*, 392 Md. 131, 137, 896 A.2d 337, 340–41 (2006) (quoting *Maryland State Bar Ass'n, Inc. v. Agnew*, 271 Md. 543, 553, 318 A.2d 811, 817 (1974)). The sanctions imposed by this Court on attorneys who have engaged in conduct involving such intentional dishonesty reflect this principle.

One such case is *Attorney Grievance Comm'n v. Garcia*, 410 Md. 507, 979 A.2d 146 (2009), in which we disbarred an attorney who pleaded guilty to the crime of conspiracy to commit immigration fraud, in violation of federal law. Attorney Garcia, on behalf of a client for whom he was attempting to secure a work visa, directed his secretary to draft a fraudulent employment verification letter, which he then signed in the name of his client's fictitious employer and forwarded to the INS. *Id.* at 516–17, 979 A.2d at 151–52. We noted that Garcia's conduct "involv[ed] dishonesty, fraud, deceit, or misrepresentation in violation of Rule 8.4(c)" and "undermined public confidence in the efficacy of the immigration system and the importance of compliance with the law" in contravention of MRPC 8.4(d). *Id.* at 519, 979 A.2d at 153. In deciding that disbarment was the appropriate sanction for this misconduct, we relied on the well-known proposition that, absent compelling extenuating circumstances, not present in *Garcia*, " 'disbarment ordinarily should be the sanction for intentional dishonest conduct.' " *Id.* at 522, 979 A.2d at 155 (quoting *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001)).

One other comparable case in which disbarment was ordered for an attorney who engaged in dishonest conduct similar to that of Respondent is *Attorney Grievance Comm'n v. Byrd*, 408 Md. 449, 970 A.2d 870 (2009). In *Byrd*, the attorney was found to have violated MRPC 8.4(b), (c), and (d), by filing false business reports under oath in a bankruptcy proceeding, thereby knowingly making false statements to the bankruptcy court. *Id.* at 483, 970 A.2d at 889. The attorney also violated MRPC 3.4(c), when he deliberately contravened various orders of the bankruptcy court. *Id.* at 484, 970 A.2d at 890. We concluded that, because Byrd's conduct involved intentional dishonesty for which there were no compelling extenuating circumstances, "only the most severe sanction of disbarment will provide the protection to the public that this [attorney grievance] procedure is supposed to provide." *Id.* at 484, 970 A.2d at 890 (internal quotation marks and citation omitted).

Respondent's misconduct, like that of the attorneys in *Garcia* and *Byrd*, is "one infected with fraud, deceit and dishonesty." *Attorney Grievance Comm'n v. Willcher*, 340 Md. 217, 220, 665 A.2d 1059, 1061 (1995) (disbarring attorney who had been convicted of unlawful solicitation of money from an indigent whom he was appointed to represent). As conceded by Respondent in the "Stipulation, Agreement and Affidavit containing the Respondent's Conditional Admission of Misconduct" (and evidenced by his related guilty plea), Respondent acted with intentional dishonesty when he testified falsely during his personal bankruptcy proceeding.

Moreover, just as in *Garcia*, 410 Md. at 529, 979 A.2d at 158, and *Byrd*, 408 Md. at 484, 970 A.2d at 890, there is insufficient mitigation to obviate the need to disbar Respondent. The Colorado Supreme Court, pursuant to its "Order Approving Conditional Admission of Misconduct and Imposing Sanctions Pursuant to C.R.C.P. 251.22," accepted the following factors in mitigation: "lack of prior discipline, personal and emotional problems, full and free disclosure to the disciplinary board and cooperative attitude toward the proceedings, and his apparent recovery from his alcohol dependence which an

expert opined contributed to his misconduct." Such mitigation does not "offset the significance of his numerous rule violations...." *Byrd,* 408 Md. at 485, 970 A.2d at 890.

## IV.

Guided by *Garcia, Byrd,* and the cases cited therein, and in light of our reciprocal discipline cases in which we have imposed consistent sanctions on attorneys of this Bar regardless of the jurisdiction in which the misconduct occurred, *see, e.g., Weiss,* 389 Md. at 555, 886 A.2d at 620, we conclude that "the current state of law in this State warrants substantially different discipline than that imposed by" Colorado, *id.,* 886 A.2d at 620. We hold that disbarment, rather than a term of suspension as ordered by the Colorado Supreme Court, is the appropriate sanction for Respondent's misconduct. Accordingly, we order him disbarred.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JOHN JOSEPH ZODROW.**

