*Attorney Grievance Commission of Maryland v. Jon A. Lefkowitz*, Misc. Docket AG No. 29, September Term 2018. Opinion by Hotten, J.

**ATTORNEY DISCIPLINE – RECIPROCAL DISCIPLINE – DISBARMENT**

The Court of Appeals disbarred Respondent, Jon A. Lefkowitz, who violated Maryland Attorneys' Rules of Professional Conduct 19-308.4(a), (b), (c), and (d). These violations were based on Respondent's conduct which resulted in his conviction of criminal facilitation in the fourth degree pursuant to New York Penal Law § 115.00(1). Respondent was suspended from the practice of law in the State of New York based on this conduct. The Court found clear and convincing evidence that Respondent's conduct was an exceptional circumstance and warranted substantially different discipline in Maryland under Maryland Rule 19-737(e). The deceitful and dishonest nature of Respondent's actions, as well as Respondent's failure to show any level of remorse before the Court of Appeals, is prejudicial to the administration of justice and warrants disbarment rather than a reciprocal discipline of suspension as imposed by the State of New York.

Argued: March 1, 2019

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 29

September Term, 2018

_____

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

JON A. LEFKOWITZ

_____

Barbera, C.J.,
Greene,
McDonald,
Watts,
Hotten,
Getty,
Adkins, Sally D.,
(Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Hotten, J.

_____

Filed: March 29, 2019



Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

On October 25, 2018, the Attorney Grievance Commission of Maryland, acting through Bar Counsel ("Petitioner"), filed a Petition for Disciplinary or Remedial Action against Jon A. Lefkowitz ("Respondent"). The petition alleged that Respondent violated Maryland Attorneys' Rules of Professional Conduct ("MARPC") 19-308.4(a), (b), (c), and (d)[1] based on conduct which resulted in his conviction of criminal facilitation in the fourth degree[2] by the Appellate Division of the Supreme Court in the Second Judicial Department of New York. Respondent was suspended from the practice of law in New York for two-years as a result of this conduct.

In response to the Petition, and in accordance with Maryland Rule 19-737(c), this Court issued a Show Cause Order on October 26, 2018, directing Petitioner and Respondent to "show cause in writing based upon any grounds set forth in Maryland Rule 19-737(c) why corresponding discipline [or inactive status] should not be imposed." Both Petitioner and Respondent timely responded to the Show Cause Order, and oral argument

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and re-codified, without substantive change, in Title 19 of the Maryland Rules. Respondent's misconduct occurred prior to the recodification. For purposes of consistency, and because the Rules are substantively the same, we refer to them as they are currently codified as MARPC throughout this opinion.

[2] New York Penal Law § 115.00 provides in pertinent part:
A person is guilty of criminal facilitation in the fourth degree when, believing it probable that he is rendering aid:
  1. to a person who intends to commit a crime, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit a felony[.]

before this Court took place on March 1, 2019.  For the reasons outlined below, we order Respondent disbarred from the practice of law in the State of Maryland.

## FACTUAL AND PROCEDURAL BACKGROUND

Respondent was admitted to the New York State Bar on January 5, 1994 and the Maryland State Bar on July 6, 1994.[3]  On May 11, 2016, Respondent pled guilty before the Onondaga County Court of New York to one count of criminal facilitation in the fourth degree, N.Y. Penal Law § 115.00(1), and entered into a plea and cooperation agreement. In addition to pleading guilty, the agreement provided that: Respondent waive his right to appeal the guilty plea; Respondent acknowledge that his license to practice law may be negatively impacted; Respondent shall fully cooperate with any investigation conducted by the New York Office of the Attorney General ("OAG"); Respondent inform the OAG if he plans to travel outside of the tri-state (New York, New Jersey, Connecticut) area; and Respondent shall refrain from committing any other crimes.  On May 12, 2017, Respondent was sentenced to a one-year conditional discharge.[4]

The conduct leading to Respondent's guilty plea occurred in connection with a criminal case in which the State of New York prosecuted Respondent's cousin and his cousin's wife, Alexander March and Sima March respectively, for mortgage fraud.  At the

---

[3] Respondent maintains that he "do[es] not practice law in Maryland, and never did, and probably never will."

[4] When a conditional discharge is issued, "the defendant shall be released with respect to the conviction for which the sentence is imposed without imprisonment or probation supervision but subject, during the period of conditional discharge, to such conditions as the court may determine."  N.Y. Penal Law § 65.05(2).

time, Mr. and Ms. March were in Canada, fighting extradition to New York.  Mr. March

secured Respondent's assistance in seeking testimony from a witness in the mortgage fraud

case who had provided grand jury testimony against Mr. and Ms. March.  In Respondent's

response to this Court's Show Cause Order, he explains that Mr. March asserted that the

Attorney General of the State of New York inaccurately represented the witness's

testimony to the Canadian authorities, and that he wished to acquire and provide "the actual

testimony and true facts to the Canadian Appellate Court[.]"  In accordance with Mr.

March's request, Respondent obtained and prepared a subpoena template from the New

York Unified Court System website.[5]  The subpoena, addressed to a Ms. Jacqueline

Watkins, stated as follows:

> WE COMMAND YOU, that all business and excuses being laid aside, answer the attached questionnaire, under oath, and return it to the Law Office of Jon Ari Lefkowitz PC, on or before the 17[th] day of January 2014.
> 
> ***
> 
> Failure to comply with this subpoena is punishable as contempt of Court and shall make you liable to the person on whose behalf this subpoena was issued for a penalty not to exceed fifty dollars and all damages sustained by reason of your failure to comply.
> 
> WITNESS, Honorable Donald A. Greenwood, one of the judges of said Court at Syracuse, New York on the 15[th] day of Nov[.], 2013.

The subpoena was neither directed nor authorized by Judge Greenwood.  Neither the

Honorable Judge Greenwood's signature, nor Respondent's signature, appeared on the

---

[5] The subpoena template and the accompanying instructions that were utilized by Respondent can be viewed at: https://www.nycourts.gov/courts/6jd/forms/SRForms/subpducestecum_instructwithsamp.pdf, *archived at* https://perma.cc/VA8D-XDYP.

3

subpoena. However, a signature line with Respondent's name, address, and title as "Attorney for Sima March" below it, appeared in the bottom right corner of the form.

At his plea hearing before the County of Onondaga Court on May 11, 2016, Respondent admitted to the following:[6]

> [O]n or about November 22, 2013, believing it probable that [he was] rendering aid to Alexander March, who intended to commit a crime in Onondaga [C]ounty, that [he] engaged in conduct which provided Alexander March with the means and opportunity through the commission thereof and which in fact aided Alexander March to commit the felony of forgery in the second degree, in violation of Penal Law Section 170.10 Subdivision 1; to wit, with knowledge that it would be served, [he] drafted a judicial subpoena that purported to be witnessed by a Supreme Court judge that ordered a witness to answer a written questionnaire under oath and under penalty of contempt in regards to the matter of the *People of the State of New York v. Sima [] March and Alexander March*.

On May 12, 2017, Respondent was sentenced to a one-year discharge, conditioned upon the accompanying plea agreement.

On March 23, 2017, Respondent was suspended from the practice of law in the State of New York pursuant to New York Judiciary Law § 90(4)(f),[7] based on his conviction of criminal facilitation in the fourth degree, categorized as a serious crime, relative to the above admitted conduct. On July 19, 2017, Respondent was ordered by the Supreme Court

---

[6] The circumstances under which Respondent's conduct was brought to the attention of the New York State authorities is unclear.

[7] N.Y. Jud. Law § 90(4)(f) provides:
Any attorney and counsellor-at-law convicted of a serious crime, as defined in paragraph d of this subdivision, whether by plea of guilty or nolo contendere or from a verdict after trial or otherwise, shall be suspended upon the receipt by the appellate division of the supreme court of the record of such conviction until a final order is made pursuant to paragraph g of this subdivision.

4

of the State of New York Appellate Division, Second Judicial Department (the "New York Court") to show cause at a hearing as to why an order of suspension, censure, or disbarment should not be imposed upon his license to practice law in the State of New York. Before the New York Court, Respondent requested a sanction no greater than a public censure, pointing to the following mitigating factors: he harbored no intent to deceive; he acted in good faith by using a subpoena form that he had previously used without difficulty; he was merely attempting to help a cousin; he did not act for financial gain; he made a mistake, which he vowed to never repeat; and he had an excellent reputation as an attorney who cares deeply about his clients. The New York Court concluded that

> [n]otwithstanding the above mitigation, the respondent's conduct on its face created a deception. Not only had Judge Greenwood not signed the subpoena, but the respondent had not entered an appearance on behalf of his cousin or his cousin's wife. Yet, the respondent interjected himself into a criminal proceeding by providing the subpoena to his cousin for the purpose of evading extradition. The conclusion that the respondent's conduct constituted a knowing, direct, and intentional interference in the judicial process is inescapable as he admittedly attempted to assist his cousin in evading extradition.

On July 11, 2018, the New York Court suspended Respondent from the practice of law in the State of New York for two years, giving credit to the time that had elapsed since Respondent was summarily suspended on March 23, 2017 pursuant to N.Y. Judiciary Law § 90(4)(f). Respondent promptly notified the Maryland State Bar of his suspension, after which the current proceedings before this Court were initiated.

## STANDARD OF REVIEW

As a general matter, the petitioner in attorney grievance matters has the burden of proving the allegation against the respondent by clear and convincing evidence. *Att'y*

*Griev. Comm'n v. Edib*, 415 Md. 696, 706, 4 A.3d 957, 964 (2010); *see also* Md. Rule 19-727(c).

> In reciprocal discipline cases, the findings of fact and conclusions of law in the original jurisdiction are conclusive evidence of an attorney's misconduct. [Md. Rule 19-737(g)]. In our independent review of the record, we accept the hearing judge's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed essentially *de novo.* As a result, it is this Court who decides whether a lawyer has violated the [Maryland Attorneys' Rules of Professional Conduct].

*Att'y Griev. Comm'n v. Weiss*, 389 Md. 531, 545, 886 A.2d 606, 614 (2005) (internal citations and quotations omitted). While we are often "inclined . . . to impose the same sanction as that imposed by the state in which the misconduct occurred[,]" we are not required to reach such a conclusion. *Id.* at 546, 886 A.2d at 615. We may depart from the discipline imposed by another jurisdiction where we find clear and convincing evidence that exceptional circumstances exist to warrant a "substantially different discipline[.]" Md. Rule 19-737(e).

We have "the long-established duty to impose discipline that is consistent with our attorney disciplinary jurisprudence by assessing, independently, the propriety of the sanction imposed by a sister jurisdiction, as well as the sanction recommended by Bar Counsel." *Att'y Griev. Comm'n v. Katz,* 429 Md. 308, 317, 55 A.3d 909, 914 (2012). "We impose corresponding discipline only if the purpose of the originating jurisdiction's sanction is congruent with ours, while remaining cognizant that '[o]ur purpose in attorney discipline cases is the protection of the public, rather than the punishment of the erring attorney.'" *Att'y Griev. Comm'n v. Peters-Hamlin*, 447 Md. 520, 538-39, 136 A.3d 374,

6

384-85 (2016) (citing *Att'y Griev. Comm'n v. Gordon*, 413 Md. 46, 56, 991 A.2d 51, 56-57 (2010)).

## DISCUSSION

Respondent is charged with violating MARPC 19-308.4(a), (b), (c), and (d). Rule 19-308.4 provides in pertinent part:

It is professional misconduct for an attorney to:

(a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

Clear and convincing evidence exists to establish that Respondent violated MARPC 19-308.4(a), (b), (c), and (d), as alleged by Petitioner. The Supreme Court of the State of New York observed that Respondent's "conduct on its face created a deception." We agree that Respondent's drafting of a judicial subpoena that wrongly asserted to be witnessed by a New York State judge was intentionally dishonest and deceitful in violation of MARPC 19-308.4(c). Furthermore, Respondent was convicted of the crime of criminal facilitation in the fourth degree as a result of his conduct in violation of MARPC 19-308.4(b). These actions "bring[] the legal profession into disrepute[]" and negatively impact the public's perception of the legal profession, violating MARPC 19-308.4(d). *Att'y Griev. Comm'n v. Mitchell*, 445 Md. 241, 262, 126 A.3d 72, 84 (2015), *see also Att'y Griev. Comm'n v. Peters-Hamlin*, 447 Md. 520, 540-41, 136 A.3d 374, 385-86 (2016). Finally, Respondent

7

violated MARPC 19-308.4(a) by violating the above Rules. *See Att'y Griev. Comm'n v. Adams*, 441 Md. 590, 611, 109 A.3d 114, 126 (2015) ("The violation of any other rule of professional misconduct is thereby a violation of [MARPC] 8.4(a).") (citation omitted).

Petitioner requests that we decline to impose reciprocal discipline, and instead, order Respondent disbarred from the practice of law in the State of Maryland. Respondent requests this Court to impose a reprimand or in the alternative, if we believe suspension is the appropriate sanction, to order that suspension concurrent with that of the New York suspension and inclusive of his time already served.[8] Pursuant to MARPC 19-737(e),

> Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:
>
> ***
>
> (3) the imposition of corresponding discipline would result in grave injustice; [or]
> (4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State[.]

When considering the type of sanction, if any, to impose, we look "not only [to] the decision of the sister jurisdiction, but also on the specific facts of each case, balanced against Maryland precedent." *Att'y Griev. Comm'n v. Katz*, 429 Md. 308, 317, 55 A.3d 909, 914 (2012) (citing *Att'y Griev. Comm'n v. Gordon*, 413 Md. 46, 56, 991 A.2d 51, 57 (2010)). The purpose of disciplinary proceedings is not to punish the attorney, but to protect the public "through deterrence of the type of conduct which will not be tolerated, and [] removing those unfit to continue in the practice of law from the rolls of those

---

[8] Because Respondent's suspension by the State of New York accounted for the lapse in time between his suspension pursuant to N.Y. Jud. Law § 90(4)(f) on March 23, 2017, and his formal suspension on July 11, 2018, Respondent's New York license will eligible for reinstatement on or about March 23, 2019.

authorized to practice in this State." *Att'y Griev. Comm'n v. Sucklal*, 418 Md. 1, 10 n. 3, 12 A.3d 650, 655 n. 3 (2011) (internal quotations omitted).

In *Att'y Griev. Comm'n v. Zodrow*, this Court considered whether to impose reciprocal sanctions against attorney Zodrow who had been suspended from the practice of law in Colorado for one year and one day for "knowingly fail[ing] to make pertinent disclosures . . . and testif[ying] falsely" in bankruptcy proceedings involving his law firm. 419 Md. 286, 301, 19 A.3d 381, 390 (2011). We concluded that Zodrow's conduct was "infected with fraud, deceit, and dishonesty[,]" warranting disbarment from the practice of law in the State of Maryland. *Id.* at 305, 19 A.3d at 392-93 (quoting *Att'y Griev. Comm'n v. Willcher*, 340 Md. 217, 220, 665 A.2d 1059, 1061 (1995)). "In deciding that disbarment was the appropriate sanction for this misconduct, we relied on the well-known proposition that, absent compelling extenuating circumstances . . . disbarment ordinarily should be the sanction for intentional dishonest conduct." *Id.* at 304, 19 A.3d at 392 (internal citations and quotations omitted); *see also Att'y Griev. Comm'n v. Garcia*, 410 Md. 507, 979 A.2d 146 (2009) (disbarring attorney Garcia because his conduct "involve[ed] dishonesty, fraud, deceit, or misrepresentation" and "undermined public confidence in the [legal] system and the importance of compliance with the law[.]"). Zodrow's intentional dishonest conduct was "evidenced by his related guilty plea" to testifying falsely in his bankruptcy proceeding. *Id.* at 305, 19 A.3d at 393.

In *Att'y Griev. Comm'n v. Peters-Hamlin*, we similarly considered whether to impose reciprocal sanctions against attorney Peters-Hamlin, who was suspended from the practice of law in the State of New York for seven years. 447 Md. 520, 136 A.3d 374

9

(2016). While serving as lead counsel for a plaintiff in a trade secrets infringement suit, Peters-Hamlin instructed her associate to "mark-up" deposition transcripts and claim it as work product, made false statements to the court to conceal this conduct, and violated court confidentiality orders by making copies of deposition transcripts. *Id.* at 524, 136 A.3d at 376. Before this Court, Peters-Hamlin neglected to express sincere remorse for her actions and continuously deflected blame for her actions on to others. *Id.* at 545, 136 A.3d at 388. Because Peters-Hamlin's conduct ran contrary to the characteristics of candor and truthfulness, "which speak[] to the heart of an attorney's fitness to practice law[,]" we declined to impose reciprocal sanctions, instead ordering the attorney disbarred from the practice of law in the State of Maryland. *Id.* at 551, 136 A.3d at 392.

Respondent's conduct and the facts of this case are analogous to these cases where we imposed disbarment rather than issuing a reciprocal sanction. The State of New York imposed a two-year suspension from the practice of law against Respondent for his criminal conviction of criminal facilitation in the fourth degree. Respondent drafted and issued a subpoena, in which he asserted that Judge Donald A. Greenwood of the County Court of the State of New York, County of Onondaga witnessed the subpoena and that Respondent was the attorney on record for Ms. Sima March. However, Judge Greenwood did not witness or sign the subpoena, and Respondent had not formally entered his appearance as Mr. or Ms. March's attorney. The completed subpoena, along with an attached questionnaire sheet provided by Mr. March with questions for the recipient to answer, was eventually served on a grand jury witness in Mr. and Ms. March's underlying mortgage fraud case. This invalid subpoena threatened the grand jury witness with

10

contempt of Court, along with a fine and damages, for failure to respond. The conduct, which was admitted to by Respondent, eventually led to his guilty plea of criminal facilitation in the fourth degree.

The form attached to the subpoena template that Respondent utilized on the March's behalf set forth step-by-step instructions for completing the subpoena. In emphasized language at the top of the instructions, it read: "**A SUBPOENA MUST BE SIGNED BY A JUDGE *BEFORE* IT IS SERVED.**" The instructions further provided, in step #15, to "[p]rint or type the name of the Judge assigned to your case []." Respondent asserts that he merely typed the name of Judge Greenwood, who was in fact the Judge assigned to the March's mortgage fraud case, as the form instructed. However, the instructions go on to advise the party to bring the completed subpoena form to the Clerk's Office, which will then be forwarded to the Judge to be signed. The subpoena issued by Respondent was not witnessed by Judge Greenwood, was not provided to the Clerk's Office, and was not signed by Judge Greenwood prior to its service on the grand jury witness. Respondent aided in the commission of criminal felony and attempted to subvert the administration of justice in a pending case.

"Unlike matters relating to competency, diligence[,] and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." *Att'y Griev. Comm'n v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001). In issuing a two-year suspension from the practice of law, the New York Court commented that "[R]espondent's conduct on its face created a deception." Respondent

11

clearly misrepresented the legitimacy of the subpoena, both by writing Judge Greenwood's name without having it witnessed or signed by Judge Greenwood, and by titling himself as the attorney for Ms. March without having filed any formal appearance as such. The instructions attached to the subpoena template that Respondent admitted to using clearly set forth the steps for fully and accurately completing the subpoena. Respondent's intentional, dishonest conduct is further evidenced by his guilty plea and agreement before the New York Court. *See Zodrow*, 419 Md. at 305, 19 A.3d at 393 (determining that an attorney's intentional, dishonest conduct may be "evidenced by his related guilty plea").

Additionally, Respondent has failed to show any appreciation for the gravity of his conduct or expressed remorse for his actions. Respondent maintains that his actions have had no consequences to the public or the justice system as a whole, that he "was not convicted of any crime that could possibly be construed as interference with the judicial process[,]" and that "there is no evidence that [he] actually did interfere in any administration of justice." Respondent's characterization of his crime and the accompanying consequences is patently wrong. Respondent was convicted of criminal facilitation, defined as "believing it probable that he is rendering aid . . . to a person who intends to commit a crime, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit a felony[.]" N.Y. Penal Law § 115.00(1). The very definition of the crime for which Respondent was convicted requires Respondent to have *in fact* aided in the commission of a felony. Respondent drafted a judicial subpoena on behalf of a family member whom he did not formally represent, purportedly witnessed by a New York State judge, which

12

ordered a witness, upon penalty of contempt and fines, to answer written questions under oath. It is impossible to acknowledge committing such an act, and in the same breath proclaim that no interference in the justice system occurred.

This Court recognizes a number of factors that may mitigate an attorney's conduct, including:

> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Att'y Griev. Comm'n v. Coppola,* 419 Md. 370, 407, 19 A.3d 431, 453 (2011). Respondent asserts the following mitigating factors to support the imposition of a reciprocal sanction rather than disbarment: there was no pattern of misconduct, his actions were not self-serving or for financial gain, he has no prior disciplinary history except for a fine, he had no dishonest or selfish motive, no one was harmed and "[t]here were zero consequences[,]" he promptly notified Maryland of his conviction, New York has already imposed "severe sanctions" upon him, and he is remorseful.[9] We find Respondent's claims unconvincing. Respondent refuses to accept responsibility for his actions and appears unable to

---

[9] While it is not a mitigating factor, Respondent also asserts "that the integrity of the legal system is not in danger [because he has] never practiced law in Maryland, [has] no cases in Maryland currently, and none in the foreseeable future." We find this point not only speculative regarding Respondent's future practice of law in this State, but irrelevant in light of his blatant misconduct and abuse of the justice system. *See Peters-Hamlin*, 447 Md. at 545-46, 136 A.3d at 388-89.

13

understand the consequences of them, even denying that any such consequences exist as explained *supra*. Respondent drafted the subpoena with the intent of aiding Mr. and Ms. March in evading criminal prosecution. While Respondent was suspended from the practice of law in New York for two years, we do not agree that such a sanction is "extreme," particularly given the nature of his conduct. Nor do we believe, as discussed *supra*, that Respondent is truly remorseful for his actions. Additionally, Respondent was sanctioned in 2008 and issued a fine[10] for failing to appear in court on behalf of a client, and has been a practicing law for over 20 years, giving him substantial experience in the practice of law, which aggravate his present offense. *See Att'y Griev. Comm'n v. Bleecker*, 414 Md. 147, 176-77, 994 A.2d 928, 945-46 (2010) (listing "prior disciplinary offenses[]" and "substantial experience in the practice of law[,]" among other factors, as aggravating factors in attorney discipline cases). Respondent's behavior constitutes serious misconduct rooted in dishonesty and the subversion of the legal system.

## CONCLUSION

We find that clear and convincing evidence supports the conclusion that Respondent violated Maryland Attorneys' Rules of Professional Conduct 19-308.4(a), (b), (c), and (d) by engaging in intentionally dishonest and deceitful conduct that is prejudicial to the administration of justice. We also find clear and convincing evidence that Respondent's conduct warrants a more serious sanction than reciprocal discipline. *See* Md. Rule 19-737(e). "We must adhere to the primary function of disciplinary matters, which is to

---

[10] While Respondent eventually paid this fine, he was issued an admonition on January 11, 2008 for failing to pay the fine in a timely manner.

14

protect the public and maintain the integrity of the legal profession." *Att'y Griev. Comm'n v. Peters-Hamlin*, 447 Md. 520, 552, 136 A.3d 374, 392 (2016). Respondent's deceptive conduct attempted to undermine the administration of justice. It is clear to this Court that Respondent's failure to appreciate the gravity of his conduct and demonstrate remorse for his actions warrants a substantially different discipline than that imposed by the State of New York. "Attorneys . . . are not and cannot be hired guns for individuals who seek to subvert the administration of justice. Rather, the great strength of our profession lies in the integrity with which we act and the honor that we bring to our work." *Att'y Griev. Comm'n v. Coppola,* 419 Md. 370, 411, 19 A.3d 431, 455 (2011). Respondent's conduct flies in the face of the basic tenet of upholding the integrity of our justice system, and constitutes an abuse of the administration of justice. Accordingly, we order Respondent disbarred from the practice of law in the State of Maryland.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JON A. LEFKOWITZ.**

15