136 A.3d 374

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Kristan PETERS–HAMLIN.**

**Misc. Docket AG No. 30, Sept. Term, 2015.**

Court of Appeals of Maryland.

March 25, 2016.

Reconsideration Denied June 21, 2016.

**522**

Lydia E. Lawless, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Kristan L. Peters–Hamlin (Westport, CT), for Respondent.

Argued before: BARBERA, C.J., BATTAGLIA, GREENE, ADKINS, McDONALD, WATTS and HOTTEN, JJ.

HOTTEN, J.

This reciprocal discipline action arises from a disciplinary proceeding initiated in the State of New York against Respondent, Kristan Peters–Hamlin, who while serving as lead counsel for a plaintiff in a trade secrets infringement suit, instructed a first-year associate to "mark-up" deposition transcripts and claim them as attorney work product; knowingly made false statements to the court to conceal same; and made copies and ordered additional copies of deposition transcripts for use in another matter, in contravention of court confidentiality orders.

On August 5, 2015, Petitioner, the Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed with this Court a Petition for Disciplinary or Remedial Action ("Petition") against Respondent based on her misconduct in New York. The Petition was brought as a reciprocal discipline matter pursuant to Maryland Rules 16–751 (petition for disciplinary or remedial action) and 16–773 (reciprocal discipline or

inactive status). Attached to the Petition were certified copies of the Opinion and Order of the Committee on Grievances for the United States District Court, Southern District of New York ("Grievance Committee") dated April 10, 2013 and the Opinion of the United States Court of Appeals for the Second Circuit dated April 4, 2014.

By Order dated April 10, 2013, the Grievance Committee suspended Respondent from the practice of law in the United States District Court, Southern District of New York for seven years, *nunc pro tunc*[1] to April 10, 2008. Respondent appealed the Grievance Committee's April 10, 2013 Order to the United States Court of Appeals for the Second Circuit. By Opinion and Order dated April 4, 2014, the Second Circuit affirmed the April 10 Order.

In issuing its sanction, the Grievance Committee adopted the findings of fact and conclusions of law of the Honorable Lisa Margaret Smith, United States Magistrate Judge for the Southern District of New York ("magistrate judge"), who presided over Respondent's evidentiary hearing. The magistrate judge found knowing and intentional misconduct in violation of the New York Rules of Professional Conduct ("NYRPC"), 3.3(a)(1);[2] 3.4(c);[3] and 8.4(c) and (d).[4]

---

**1.** *Nunc pro tunc* is defined as "[h]aving retroactive legal effect through a court's inherent power[.]" Black's Law Dictionary (10th ed. 2014).

**2.** NYRPC Rule 3.3(a) states, in pertinent part: "(a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]"

**3.** NYRPC Rule 3.4(c) states, in pertinent part: "A lawyer shall not: (c) disregard or advise the client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but the lawyer may take appropriate steps in good faith to test the validity of such rule or ruling[.]"

**4.** NYRPC Rule 8.4 states, in pertinent part: "A lawyer or law firm shall not: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice[.]"

The filing of the Petition by Bar Counsel was precipitated by events occurring in the spring of 2007, in connection with Respondent's representation as lead counsel of the plaintiff in *Wolters Kluwer Fin. Servs. Inc. v. Scivantage et al.,* Case No. 07 Civ. 2352 in the United States District Court, Southern District of New York, while she was a partner at Dorsey & Whitney, LLP ("Dorsey & Whitney"). The Petition alleges that Respondent's misconduct in New York constitutes violations of the following Maryland Lawyers' Rules of Professional Conduct ("MLRPC"): 3.3(a)(1) (Candor Toward the Tribunal), 3.4(c) (Fairness to Opposing Party and Counsel), and 8.4(a), (c), and (d) (Misconduct).

On August 6, 2015, we issued an order directing Bar Counsel and Respondent to show cause pursuant to the grounds outlined in Md. Rule 16–773(e),[5] why corresponding discipline should not be imposed by this Court. Following receipt of the parties' responses, on August 20, 2015, this Court ordered Respondent indefinitely suspended from the practice of law in this State, pending further order of this Court, pursuant to Md. Rule 16–773(d).[6] This matter was not transmitted to a

---

5. **Exceptional Circumstances.** Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:
 (1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;
 (2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;
 (3) the imposition of corresponding discipline would result in grave injustice;
 (4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or
 (5) the reason for inactive status no longer exists.

6. Md. Rule 16–773(d) provides, in pertinent part:
 **Temporary Suspension of Attorney.** When the petition and disciplinary or remedial order demonstrate that an attorney has been disbarred or is currently suspended from practice by final order of a court in another jurisdiction, the Court of Appeals may enter an order, effective immediately, suspending the attorney from the practice of law, pending further order of Court. . . .

hearing judge to hold an evidentiary hearing and render findings of fact and conclusions of law.[7] On January 12, 2016, we heard oral argument.

On January 29, 2016, Respondent filed with this Court, a "MOTION FOR LEAVE TO FILE STATEMENT CORRECTING MATERIAL MISSTATEMENTS MADE BY DISCIPLINARY COUNSEL DURING ORAL ARGUMENT ON JANUARY 12, 2016" ("Motion for Leave"), alleging that Bar Counsel made a variety of misrepresentations regarding the reciprocal actions taken in other courts and bars, as well as the magistrate judge's findings. Bar Counsel filed a response to Respondent's motion on February 4, 2016, stating that the misstatements and misrepresentations alleged by Respondent were addressed, or could have been addressed, in her rebuttal.

Bar Counsel further maintained that the substance of Respondent's motion was not a pleading attempting to correct the record, but rather, an attempt "to supplement her oral argument with additional facts and legal argument." On February 12, 2016, Respondent filed a reply ("Reply") in further support of her Motion for Leave, asserting that Bar Counsel's response to her motion failed to correct the misstatements and misrepresentations proffered during oral argument.

For the reasons that follow, we conclude that Respondent violated MLRPC 3.3(a)(1), 3.4(c), and 8.4(a), (c), and (d), and the appropriate sanction for Respondent's misconduct is disbarment.

---

**7.** Generally, this Court does not assign a hearing judge to reciprocal disciplinary petitions under Md. Rule 16–752 (Order Designating Judge) and Md. Rule 16–757 (Judicial Hearing), if the facts of the case as determined by the originating jurisdiction establishes that misconduct occurred. *See* Md. Rule 16–773(e)(2) (stating that "[r]eciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that[ ]" an "infirmity of proof establishing the misconduct" exists.).

## BACKGROUND

The magistrate judge made the following findings of fact and conclusions of law, which we summarize:

Respondent has been an attorney since 1988. She was admitted to the Bar of the District of Columbia in 1988, the Bar of Maryland in 1998, the Bar of New York in 2000, and the Bar of Connecticut in 2007.[8] She has been in inactive status in Maryland since July 2015. Respondent is also a former partner of the law firm Dorsey & Whitney and currently maintains a law office in Stamford, Connecticut.

In April 2007, Respondent was lead counsel for Dorsey & Whitney's client, Wolters Kluwer Financial Services, Inc. ("Wolters Kluwer"), in its suit filed in the United States District Court for the Southern District of New York, against four of its former employees ("New York action"). The complaint alleged that former Wolters Kluwer employees had taken proprietary information and disclosed it to their new employer, the technology company Scivantage. At the close of extensive discovery conducted under orders of confidentiality, Dorsey & Whitney voluntarily dismissed the suit and refiled a substantially identical suit in the United States District Court for the District of Massachusetts ("Massachusetts action") after Scivantage contested personal jurisdiction in the Southern District of New York.

Dorsey & Whitney subsequently filed a motion in the Massachusetts action seeking injunctive relief and attached some of the discovery material produced by defendants in the New York action. Following a hearing on the voluntary dismissal and the use of the discovery material, *inter alia*, the presiding

---

8. In Respondent's response to the show cause order, she clarifies that she was admitted into the federal court of Connecticut in 1998, admitted to the state court in 1999 on a one-year temporary basis, then admitted permanently in 2000. Respondent was also admitted to the Bar of Pennsylvania, although a date of admission was not indicated. Respondent noted that she has been in retired status with Pennsylvania for over a decade.

judge, the Honorable Harold Baer, Jr., ("Judge Baer"), issued an opinion imposing non-monetary sanctions on Dorsey & Whitney, Respondent, Marc Reiner ("Mr. Reiner"), a former partner at Dorsey & Whitney who worked on the matter, and Wolters Kluwer. On appeal, the United States Court of Appeals for the Second Circuit affirmed the imposition of non-monetary sanctions on Respondent as a result of her misconduct, but reversed the sanctions imposed on Dorsey & Whitney and Mr. Reiner.

The New York disciplinary matter commenced when Judge Baer forwarded a copy of his decision to the Grievance Committee. Thereafter on January 30, 2008, the Grievance Committee issued an "Order to Show Cause" alleging that Respondent violated NYRPC 3.3(a)(1), 3.4(c), 8.4(c) and (d),[9] based upon the following three charges of misconduct:

(1) [Respondent] 'instructed an associate in her firm to alter or amend documents for the purpose of preventing their discoverability and attempted to mislead the [c]ourt as to these events;' (2) [Respondent] 'participated in a conference with the [c]ourt to adjourn a [Temporary Restraining Order] [ ("TRO") ] hearing and discuss future depositions at a time when [she] knew that those depositions and the TRO hearing would not take place;' [10] and (3) [Respondent] 'copied transcripts and ordered additional copies of transcripts in intentional disregard of court orders, and then

---

9. The order indicated violations of the New York Lawyers' Code of Professional Responsibility, 22 NYCRR § 1200.1 *et seq.*, DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation) and DR 1–102(A)(5) (conduct that is prejudicial to the administration of justice), and DR 7–102(A)(5) (knowingly make a false statement of law or fact to a tribunal) and DR 7–106(A) (disregarding a standing rule of a tribunal). In April 2009, the NYRPC replaced the former version. Accordingly, DR 1–102(A)(4) and (5) are now NYRPC 8.4(c) and 8.4(d). DR 7–102(A)(5) is now NYRPC 3.3(a)(1), and DR 7–106(A) is now NYRPC 3.4(c).

10. The Grievance Committee ultimately found Respondent not guilty of the allegations in connection with this charge. Accordingly, this charge and the facts in connection therewith will not be addressed.

used the transcripts in an action in Massachusetts in violation of the [c]ourt's Confidentiality Order.'

On April 10, 2008, the Grievance Committee issued an interim suspension order.[11] Over a year later on June 5, 2009, the Grievance Committee determined that Respondent should be disbarred, but allowed her to submit mitigation evidence. On August 6, 2009, the Grievance Committee reduced the sanction from disbarment to a seven-year suspension. Respondent appealed to the United States Court of Appeals for the Second Circuit. On April 25, 2011, the Second Circuit vacated the Grievance Committee's interim suspension order and remanded the matter for further proceedings, including an independent evidentiary hearing on the charges against Respondent.[12]

A hearing was conducted before the magistrate judge in the Southern District of New York for eleven days during the months of June through August, 2012. The magistrate judge received hundreds of exhibits and heard testimony of several witnesses at Dorsey & Whitney, including Respondent. On January 23, 2013, the magistrate judge submitted a 118–page Report and Recommendation, concluding that Respondent violated NYRPC 3.3(a)(1), 3.4(c), and 8.4(c) and (d), and recommended the imposition of a five-year suspension, *nunc pro tunc* to April 10, 2008. The Grievance Committee adopted the magistrate judge's findings of fact and conclusions of law, but ultimately imposed a seven-year suspension, *nunc pro tunc.* In support of its sanction, the Grievance Committee concluded that Respondent's conduct was *sui generis,*[13] because her conduct involved "the corruption of a young and inexperienced lawyer, over whom she had power and authority," she exhibited a lack of remorse for her inappropriate behavior, and she had a "habit of twisting the truth."

---

11. *See In re Peters,* 543 F.Supp.2d 326 (S.D.N.Y.2008).

12. *See In re Peters,* 642 F.3d 381 (2d Cir.2011).

13. *Sui generis* is defined as "[o]f its own kind or class," or "unique or peculiar." Black's Law Dictionary (10th ed. 2014).

The magistrate judge made the following findings of fact relative to the charges, which we summarize in reverse order to remain consistent with the sequence of events:

### Charge Three[14]

On April 12, 2007, Judge Baer entered a "Confidentiality Stipulation and Protective Order" ("the Confidentiality Order"), which was sent via fax and e-mail to counsel for both parties in the Wolters Kluwer litigation. Of relevance to the allegations in the instant disciplinary matter, the Confidentiality Order outlined the following stipulations:

[I]nformation designated as 'CONFIDENTIAL INFORMATION' or 'ATTORNEYS' EYES ONLY INFORMATION' ("Protected Material"), could be 'used solely for purposes of the prosecution and defense of the above-entitled litigation. . . .'

Protected Material was not to be 'used in any other litigation proceeding. . . .'

'The obligations created by this Order shall survive the termination of this lawsuit unless otherwise modified' by the [c]ourt and that '[t]he [c]ourt,' defined as 'the United States District Court, Southern District of New York,' 'shall retain jurisdiction, even after termination of this lawsuit, to enforce this Order and to make such amendments and modifications to this Order as may be appropriate. . . .'

The "ATTORNEYS' EYES ONLY" designation meant that protected material could only be disclosed to attorneys at Dorsey & Whitney, defendants' firms, Akin Gump Strauss Hauer & Feld, LLP and Sullivan & Worcester, LLP, the court reporters and videographers who covered the depositions, and independent experts retained by the parties.

In addition to prior document production, the defendants produced three CD–ROMs with electronic discovery to Dorsey & Whitney on the evening of April 13, 2007, which was the

---

14. Respondent was away on vacation in Turkey while most of the events in connection with this charge transpired. Much of her involvement in the proceeding events was conducted by phone and e-mail.

same day the firm filed a voluntary dismissal of the New York action. Subsequently on April 15, 2007, after counsel for the defendants became aware of Dorsey & Whitney's transfer of the New York action and subsequent dismissal of same, they contacted Respondent and requested return of all their discovery documents and copies thereof. However, Respondent refused. On April 16, after Respondent was made aware by Mr. Reiner of a conference call with Judge Baer and defendants' counsel to resolve the matter, Respondent replied, "I am going to want a copy made of the discs no matter what this judge says ... I will take the heat for that decision, but I am going to want a copy made no matter what[.]"

In efforts to address both the defendants' concern regarding Respondent's resistance to their demands and Respondent's concern of spoliation issues if she returned same to the defendants, Judge Baer issued an oral order directing return of all documents in Dorsey & Whitney's possession to the court within twenty-four hours. After Mr. Reiner informed Respondent of Judge Baer's order, Respondent stated, "[t]his is exactly what I thought would happen which is why I told you I want copies of the disc[s]."

Shortly thereafter, Respondent contacted Eve Morris, head of the secretarial staff at Dorsey & Whitney, to arrange to have copies made of all hard-copy documents and the CD–ROMs produced by the defendants. Respondent then used the copies in a motion for protective order submitted to Judge Baer seeking permission to send copies of the defendants' document production to the judge in the Massachusetts action.

On April 17, 2007, after Judge Baer became aware that Dorsey & Whitney made copies of the defendants' document production, he sent an e-mail to the firm ordering that all discovery in plaintiff's possession be delivered to defendants by noon the following day. Thereafter on April 19, 2007, Judge Baer issued an oral order to Zachary Carter ("Mr. Carter"), head of the New York Trial Group at Dorsey & Whitney, directing the firm to return all deposition transcripts

taken during the course of the Wolters Kluwer litigation to the court.

The following day, in response to an e-mail from Deidre Sheridan ("Ms. Sheridan"), an associate at Dorsey & Whitney, suggesting that the firm "consider a middle g[r]ound" that would allow Judge Baer to hold the transcripts, but release them for use in their motions with the court, Respondent declined. The deposition transcripts were eventually delivered to the court, beyond Judge Baer's deadline.

On April 21, 2007, after confirming delivery of the deposition transcripts to the court, Respondent e-mailed in-house counsel at Wolters Kluwer, stating, *inter alia*, that "the next step" was "sending the transcripts to the new judge." (emphasis omitted). Shortly thereafter, Respondent e-mailed the court reporter from Veritext who covered the depositions for the defendants, to request copies of the discs with the deposition transcripts, claiming that she "misplaced" the four discs containing the deposition transcripts. Respondent did not disclose this request to Judge Baer or anyone at Dorsey & Whitney.

On or about April 23 or 24, 2007, Respondent was confronted by Jonathan Herman ("Mr. Herman"), a partner at Dorsey & Whitney assigned to oversee Respondent's work, regarding Respondent's knowledge that associates had not returned deposition transcripts to the court. A few days prior on April 20, associates Ms. Sheridan and Jordan Brackett ("Mr. Brackett") informed Mr. Carter that they each still possessed folders containing working copies of the transcripts that have been marked up and tabbed. Mr. Carter spoke to Respondent about the deposition transcripts on or about April 26 or 27, and Respondent spoke to Ms. Sheridan regarding Mr. Carter's decision to not return them on April 26.

After Respondent's discussion with Mr. Herman, she refused to return the deposition transcripts, claiming work product privilege. Respondent subsequently sent Judge Baer's law clerk an e-mail citing caselaw from associates in support of her use of the discovery from the New York action,

in the Massachusetts case, contending that the latter was a "continuing matter." However, in correspondence to colleagues at Dorsey & Whitney, Respondent consistently referred to the Massachusetts action as a new case.

On April 24, 2007, Respondent assisted with drafting a motion titled, "Motion for Order to Show Cause and for Expedited Discovery and Preservation of Documents and Information to be filed in the District of Massachusetts[,]" which included a supporting memorandum of law and a declaration by Respondent. The motion was submitted to the judge in the Massachusetts action. Attached to the motion were over one-hundred pages of excerpts from the deposition transcripts in the New York action, which were designated "ATTORNEYS' EYES ONLY."

Although the motion requested, *inter alia,* an order requiring Judge Baer to return the deposition transcripts in his custody to Wolters Kluwer, or to allow Wolters Kluwer "to request duplicate transcripts from the [c]ourt reporter for use in the Massachusetts action[,]" the memorandum of law did not reflect that Respondent previously requested duplicate transcripts from the court reporter on April 21.

### Charge One ("The Brackett Charge")

Subsequently on April 24, 2007, Judge Baer's law clerk sent an e-mail to Respondent, copying defendants' counsel, and forwarded same to other members at Dorsey & Whitney involved in the Wolters Kluwer litigation. The law clerk requested a representation as to whether either firm was in current possession, or possession since April 20, any copies, in any format, of any deposition transcripts taken in the matter. The parties were directed to return any remaining deposition transcripts to the court by April 25, 11:00 a.m.

Upon receipt of the e-mail, Mr. Brackett uncovered the folder in his office containing deposition transcripts with markings and flags, as well as several clean deposition transcripts, which should have been returned on April 20. Mr. Brackett apprised Respondent by phone immediately thereaf-

ter, to which she replied that she was discussing the matter with another partner. Mr. Brackett left the folder containing the deposition transcripts in his office for Respondent to retrieve, but returned to his office the next day to discover that Respondent had not collected it. Mr. Brackett had the deposition transcripts sent to Respondent by messenger that same day.

Although Respondent received clarification from Judge Baer's law clerk that the parties were not required "to go through its pleadings files and remove all exhibits from its pleadings[,]" in response to the law clerk's request, she did not inform the law clerk that Dorsey & Whitney had already used the deposition transcripts in its filings in Massachusetts. Ultimately, none of the deposition transcripts in the firm's possession were returned to the court by the 11:00 a.m. deadline. On April 26, following a discussion between Mr. Herman and Mr. Brackett regarding his deposition transcripts, Respondent asked Mr. Brackett to accompany her to the office, where the deposition transcripts remained.

As they proceeded to review the deposition transcripts, Respondent stated to Mr. Brackett, "I'll leave the office for a few minutes, you should scribble all over them so that they'll be deemed work product and we won't have to return them." Respondent then left her office for approximately two to three minutes and Mr. Brackett proceeded to make small markings on the first page of each of the remaining clean deposition transcripts. Later that day, Mr. Brackett informed Mr. Herman of what transpired in Respondent's office.

When confronted by partners at Dorsey & Whitney of the Brackett allegation, she did not deny her statement, but stated that she was "joking" and made the statement in a mocking and sarcastic fashion. Both Respondent and her former secretary, Eileen Brennan, provided conflicting versions of the events. Apart from Respondent's directive to Mr. Brackett, both versions exculpated Respondent of any wrongdoing. The magistrate judge rejected both versions and credited Mr. Brackett's testimony.

On April 26, 2007, after becoming aware of the Brackett allegation, Judge Baer issued a subsequent order by e-mail to Respondent, directing the return of any copies of deposition transcripts to the court that evening. However, the deposition transcripts were not delivered to the court until April 27. Respondent attached a cover letter to the deposition transcripts mischaracterizing her knowledge of the matter, stating "[s]ome of the attached [deposition] transcripts that were brought to my attention yesterday for the first time do not appear to be work product privileged."

Although Respondent ultimately facilitated Dorsey & Whitney's compliance with Judge Baer's oral orders, several times throughout that period, she maintained that his orders were "not valid." Respondent has also maintained that she was not obliged to comply with Judge Baer's orders. However, in other instances she reiterated that she was lead counsel and that all matters pertaining to the Wolters Kluwer litigation must "go through" her.

In rendering her conclusions, the magistrate judge relied upon her extensive record-based findings, which were largely based upon the credibility of the witnesses, including Respondent, who testified during the eleven-day hearing. In sum, the magistrate found overwhelming evidence to support her conclusion that (1) in connection with Charge One, Respondent did, in fact, instruct Mr. Brackett, a first-year associate at Dorsey & Whitney, to place handwritten "marks" on deposition transcripts to claim attorney work-product privilege against court orders, and then attempted to mislead the court as to these events; (2) in connection with Charge Three, Respondent copied deposition transcripts and ordered additional copies of same, and then used them in the Massachusetts action, in defiance of court orders; and (3) Respondent's "repeated attempts to circumvent the proper legal process establish[ed] that she acted with a culpable state of mind" while engaging in the misconduct for which she has been charged.

## STANDARD OF REVIEW

The manner in which this Court handles reciprocal disciplinary cases is well established. Pursuant to Md. Rule 16–773(g), "the factual findings and conclusions of law of the sister jurisdiction(s) are treated generally as conclusive evidence of an attorney's misconduct." *Attorney Grievance Comm'n v. Adams*, 441 Md. 590, 605, 109 A.3d 114, 123 (2015) (quoting *Attorney Grievance Comm'n v. Katz*, 429 Md. 308, 315, 55 A.3d 909, 913 (2012)). "The introduction of such evidence does not preclude, however, the introduction of additional evidence that shows 'cause why no discipline or lesser discipline should be imposed.' " *Id.* (quoting *Katz*, 429 Md. at 316, 55 A.3d at [913] ); Md. Rule 16–773(g).[15] This Court has discretion, under Md. Rule 16–773(e), "to impose a discipline consistent with the sister jurisdiction's factual findings and conclusions, or to order a different or more serious alternative based on the existence of 'exceptional circumstances[.]' " *Adams*, 441 Md. at 605–06, 109 A.3d at 123 (quoting *Katz*, 429 Md. at 316, 55 A.3d at 913).

"Exceptional circumstances" precluding an order of reciprocal discipline include, *inter alia*, that the attorney's misconduct "does not constitute misconduct in this State or it warrants substantially different discipline in this State[.]" Md. Rule 16–773(e)(4).[16] This rule ensures that all attorneys

---

15. Md. Rule 16–773(g) provides:

 **Conclusive Effect of Adjudication.** Except as provided in subsections (e)(1) and (e)(2) of this Rule, a final adjudication in a disciplinary or remedial proceeding by another court, agency, or tribunal that an attorney has been guilty of professional misconduct or is incapacitated is conclusive evidence of that misconduct or incapacity in any proceeding under this Chapter. The introduction of such evidence does not preclude the Commission or Bar Counsel from introducing additional evidence or preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed.

16. Md. Rule 16–773(e)(4) provides, . . . "[r]eciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that . . . the conduct established does not consti-

barred in this State are subject to similar sanctions for comparable misconduct, regardless of whether the misconduct occurred in this State or another jurisdiction. *See generally Attorney Grievance Comm'n v. Zodrow,* 419 Md. 286, 302, 19 A.3d 381, 390–91 (2011). However, pursuant to Md. Rule 16–773(f),[17] this Court is "inclined, but not required, to impose the same sanction as that imposed by the state in which the misconduct occurred." *Id.* at 302, 19 A.3d at 390–91. "We are required to assess for ourselves the propriety of the sanction imposed by the other jurisdiction and that recommended by [Bar Counsel]." *Attorney Grievance Comm'n v. Whitehead,* 390 Md. 663, 672, 890 A.2d 751, 756 (2006). *See also Attorney Grievance Comm'n v. Gordon,* 413 Md. 46, 55, 991 A.2d 51, 56 (2010) ("our rules state that we *may* impose 'corresponding discipline,' not that we *shall* impose 'identical discipline.' "); *Katz,* 429 Md. at 317, 55 A.3d at 914 (noting that this Court has "the long-established duty to impose discipline that is consistent with our attorney disciplinary jurisprudence by assessing, independently, the propriety of the sanction imposed by a sister jurisdiction, as well as the sanction recommended by Bar Counsel.").

 Accordingly, "the sanction imposed will depend not only on the decision of the sister jurisdiction, but also on the specific facts of each case, balanced against Maryland precedent." *Katz,* 429 Md. at 317, 55 A.3d at 914. *See also Gordon,* 413 Md. at 56, 991 A.2d at 56–57 ("We are required to analyze each case individually and decide whether to deviate from the original jurisdiction's sanction."). We impose corresponding discipline only if the purpose of the originating

---

tute misconduct in this State or it warrants substantially different discipline in this State[.]

**17.** Md. Rule 16–773(f) provides, in pertinent part:

**Action by Court of Appeals.** Upon consideration of the petition and any answer to the order to show cause, the Court of Appeals may immediately impose corresponding discipline or inactive status, may enter an order designating a judge pursuant to Rule 16–752 to hold a hearing in accordance with Rule 16–757, or may enter any other appropriate order. . . .

jurisdiction's sanction is congruent with ours, while remaining cognizant that "[o]ur purpose in attorney discipline cases is the protection of the public, rather than the punishment of the erring attorney." *See id.*

## DISCUSSION

For the reasons that follow, we shall uphold the conclusions of law of the magistrate judge.

### MLRPC 3.3(a)(1) (False Statements of Fact or Law) and 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation)

■ MLRPC 3.3(a)(1) provides, "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]" MLRPC 3.3 as a whole, is based upon the idea that "[e]very court . . . has the right to rely upon an attorney to assist it in ascertaining the truth of the case before it[,]" which imposes upon an attorney the obligation to be fully honest and forthright throughout litigation. *Attorney Grievance Comm'n v. Dore,* 433 Md. 685, 703, 73 A.3d 161, 171 (2013).

■ Conduct that violates MLRPC 3.3 often violates MLRPC 8.4(c) as well, given that both rules concern dishonest conduct. *Id.* at 707, 73 A.3d at 174. Under MLRPC 8.4(c), "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" *Attorney Grievance Comm'n v. Barnett,* 440 Md. 254, 266, 102 A.3d 310, 318 (2014). "Dishonest acts, in and of themselves are violative of [MLRPC] 8.4(c)." *Id.* (citation omitted).

■ Clear and convincing evidence supports the magistrate judge's conclusion that Respondent violated MLRPC 3.3(a)(1) and 8.4(c) when she instructed Mr. Brackett to "mark-up" the deposition transcripts, in an intentional effort to render them attorney work product, and then knowingly made a false statement of fact to the court, claiming that the

remaining deposition transcripts in the firm's possession constituted work-product. Respondent also violated MLRPC 8.4(c) when she e-mailed the court reporter service requesting additional copies and untruthfully claiming that she had "misplaced" the discs of the deposition transcripts. Her conduct in both instances was calculated to mislead the court about her actions.

### MLRPC 3.4(c) (Duty to Obey Obligations under the Rules of a Tribunal)

MLRPC 3.4(c) provides, "[a] lawyer shall not ... knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]"

■ Clear and convincing evidence supports the magistrate judge's conclusion that Respondent violated MLRPC 3.4(c) when she knowingly copied deposition transcripts and ordered additional copies of same for use in the Massachusetts action, in contravention of Judge Baer's Confidentiality Order. The evidence demonstrates that Respondent executed this process of duplication without permission, in order to circumvent Judge Baer's Confidentiality Order in the New York action, all the while cognizant that such conduct was prohibited under the terms of the Order.

### MLRPC 8.4(d) (Conduct that is Prejudicial to the Administration of Justice)

■ MLRPC 8.4(d) provides, "[i]t is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice[.]" A lawyer violates Rule 8.4(d) "where the [attorney's] conduct would negatively impact the perception of the legal profession of a reasonable member of the public." *See Attorney Grievance Comm'n v. Haley,* 443 Md. 657, 674–75, 118 A.3d 816, 826 (2015).

■ Clear and convincing evidence supports the magistrate judge's conclusion that Respondent's repeated intentional dishonest conduct, misrepresentations, and deceit in at-

tempt to conceal same in violation of MLRPC 3.3(a)(1), 3.4(c), and 8.4(d), negatively impacts the public's perception of the legal profession, and "brings the legal profession into disrepute." *See Attorney Grievance Comm'n v. Mitchell,* 445 Md. 241, 262, 126 A.3d 72, 84 (2015).

## MLRPC 8.4(a) (Violating the MLRPC)

MLRPC 8.4(a) provides, "[i]t is professional misconduct for a lawyer to ... violate or attempt to violate the [MLRPC], knowingly assist or induce another to do so, or do so through the acts of another[.]" An attorney violates Rule 8.4(a) by violating any of the accompanying rules of the MLRPC. *See Attorney Grievance Comm'n v. Gerace,* 433 Md. 632, 645, 72 A.3d 567, 575 (2013) ("Rule 8.4(a) is violated when other Rules of Professional Conduct are breached."); *Attorney Grievance Comm'n v. Van Nelson,* 425 Md. 344, 363, 40 A.3d 1039, 1050 (2012) (noting that violation of other MLRPC constituted a violation of MLRPC 8.4(a)).

Clear and convincing evidence supports the magistrate judge's conclusion that by violating MLRPC 3.3(a)(1), 3.4(c), and 8.4(c) and (d), Respondent also violated MLRPC 8.4(a). *See Adams,* 441 Md. at 611, 109 A.3d at 126 ("The violation of any other rule of professional misconduct is thereby a violation of MLRPC 8.4(a).") (citation omitted).

## Respondent's Motion for Leave and Subsequent Reply

Respondent contends, "when asked by this Court questions regarding what reciprocal actions other courts and bars had undertaken, [Bar Counsel] materially misrepresented the majority of the reciprocal actions" imposed by the State Bar of New York, the United States District Court for the Eastern District of New York, and the State Bar of Connecticut. Respondent's argument is immaterial, in light of this Court's decision to invoke Md. Rule 16–773(e), *infra,* and impose a substantially different sanction than that of the Southern District of New York. Respondent also asserts that Bar Counsel misrepresented to this Court that she failed to report her prior discipline to the District of Columbia Bar, when she

noted in a June 1, 2015 correspondence to Bar Counsel that she informed the bar of her discipline in the Spring of 2015. However, Respondent clarified this fact before the Court in her rebuttal oral argument.

Respondent contends that Bar Counsel "misreported to the Court that there was a finding that [she] testified that Judge Baer would destroy evidence[.]" However, the Court quoted verbatim from the magistrate judge's Report, her summation of Respondent's testimony during the hearing, which confirmed the accuracy of Bar Counsel's statement. The Report indicated:

> At the hearing, [Respondent] testified that while she was away in Turkey, she was concerned that Judge Baer would 'return the documents to the people who were the spoliators and then they would get destroyed pursuant to a provision in the confidentiality order that permitted them expressly to destroy documents at the conclusion of the case.' [Respondent] further testified that she doubted whether the [c]ourt would do the right thing with respect to the preservation of evidence.

Accordingly, we reject Respondent's attempt to deflect the meaning of her statements, specifically, that she never stated that Judge Baer would destroy the discovery, but that he would return it to the defendants who would, in turn, destroy same. It was reasonable for the magistrate judge and Bar Counsel to conclude based upon the evidence that Respondent doubted Judge Baer's ability to ensure preservation of the discovery.

Respondent contends that Bar Counsel "incorrectly reported that this case was a misrepresentation case with findings by the [m]agistrate [judge] that would justify disbarment under *[Vanderlinde]*, . . ." as the magistrate judge "acknowledged that case precedent could not justify even a five-year suspension[.]" This argument is also immaterial, in light of this Court's decision to invoke Md. Rule 16–773(e), *infra*, and impose a substantially different sanction than that of other jurisdictions.

We are similarly not persuaded by Respondent's final contention that Bar Counsel misrepresented and failed to assert in its Petition, the allegation regarding Respondent's delayed notification to Maryland. The record reflects that subsequent to the time all orders of discipline were issued by other jurisdictions, Respondent failed to ever notify Bar Counsel in Maryland of the disciplinary actions, in violation of Md. Rule 16–773(a).[18]

In Respondent's Reply, she reiterated the lesser sanctions imposed in other courts and state bars,[19] in an attempt to persuade this Court that *nunc pro tunc* discipline is the appropriate sanction for her misconduct. Respondent also asserted that Bar Counsel failed to take any accountability for the alleged misstatements and misrepresentations made during oral argument in its response to her Motion for Leave. However, in light of the conclusions stated *infra*, neither of her arguments meaningfully impacts this Court's decision to impose a substantially different sanction.

### Sanction

As this Court held in *Attorney Grievance Comm'n v. Mixter*, 441 Md. 416, 527, 109 A.3d 1, 68 (2015), when determining appropriate sanctions for violation of the MLRPC:

[I]t is well settled that the purpose of attorney discipline is to protect the public, not punish the attorney. Attorney discipline is also directed at deterring other lawyers from violating the [MLRPC] and to maintain the integrity of the

---

**18.** Md. Rule 16–773(a) provides:

**Duty of Attorney.** An attorney who in another jurisdiction (1) is disbarred, suspended, or otherwise disciplined, (2) resigns from the bar while disciplinary or remedial action is threatened or pending in that jurisdiction, or (3) is placed on inactive status based on incapacity shall inform Bar Counsel promptly of the discipline, resignation, or inactive status.

**19.** Respondent also noted, and attached to her Reply, an Order of the United States Court of Appeals for the District of Columbia Circuit filed on February 10, 2016, imposing a seven-year term of suspension, *nunc pro tunc* to April 10, 2008.

legal profession. We evaluate an attorney grievance matter on its own merits and impose sanctions 'that are commensurate with the nature and gravity of the violations and the intent with which they were committed.' Therefore, we consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances.

(citations omitted). "Sanctions accomplish these goals by deterring intolerable conduct and keeping those unfit to practice law from doing so." *Attorney Grievance Comm'n v. Zimmerman,* 428 Md. 119, 144, 50 A.3d 1205, 1220 (2012).

In response to the show cause order issued by this Court on August 6, 2015, Bar Counsel asked that reciprocal discipline not be imposed, and recommended disbarment. Bar counsel submits that a deviation from the sanction imposed by the United States District Court for the Southern District of New York is warranted because "Respondent's serious misconduct, infested with dishonesty, warrants substantially different discipline in Maryland than was ordered." Respondent, in her response to the show cause order, avers:

Respondent meets each one of [the exceptions outlined in Md. Rule 16–773(e) ] to reciprocal discipline. Every bar or court considering reciprocal discipline has imposed either no discipline or lesser discipline *[nunc pro tunc]*, in some cases resulting in only a few days suspension. In fact, Connecticut—the state of Respondent's primary residence and the bar where she has principally practiced for the last seven years—has held that no discipline should be imposed.

Respondent requests that this Court follow the decision of Connecticut and impose no discipline, or alternatively, follow the other state and federal bars, which imposed reciprocal discipline *nunc pro tunc,* which would, in essence, result in no discipline.

We disagree. Respondent's conduct involved dishonesty and deceit, without compelling extenuating circumstances, which carries the risk of the ultimate sanction of disbarment by this Court. *See Zodrow,* 419 Md. at 304, 19 A.3d at 392. "[D]isbarment follows as a matter of course, 'when a member

of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling extenuating circumstances. . . .' " *Id.* (quoting *Attorney Grievance Comm'n v. Guberman*, 392 Md. 131, 137, 896 A.2d 337, 340–41 (2006)).

Before this Court, in conformance with the conduct evidenced in the magistrate judge's findings, Respondent continued to deflect, minimize her actions, and shift blame onto others at Dorsey & Whitney. Respondent merely restated the evidence previously considered by the magistrate judge and challenged the credibility determinations, which were entitled to substantial deference. *See Adams*, 441 Md. at 605, 109 A.3d at 123 ("[T]he factual findings and conclusions of law of the sister jurisdiction(s) are treated generally as conclusive evidence of an attorney's misconduct.") (quoting *Katz*, 429 Md. at 315, 55 A.3d at 913).

In some instances, Respondent also mischaracterized Maryland caselaw to bolster her position. One example relates to her reliance on *Attorney Grievance Comm'n v. Midlen*, 395 Md. 628, 911 A.2d 852 (2006), for the proposition that "evidence that [an] attorney voluntarily ceased to practice in Maryland mitigates in favor of *nunc pro tunc* discipline." Respondent avers that because she has not practiced in this State for approximately seventeen years, we should apply this Court's holding in *Midlen* and impose a term of suspension similar to the Southern District of New York and other jurisdictions.

Respondent's argument is without merit. In *Midlen*, the District of Columbia Court of Appeals suspended the attorney from the practice of law for a period of eighteen months for violation of certain rules of professional conduct. *Id.* at 637–38, 644, 911 A.2d at 858–59, 862. The attorney reported his suspension to Maryland Bar Counsel, who promptly filed a petition seeking reciprocal discipline for violations of MLRPC 1.15, 1.16, and 8.4(a), (c), and (d). *Id.* at 630, 911 A.2d at 853–54.

Acknowledging that the imposition of corresponding discipline from the date of our mandate would not be congruent because the attorney would remain suspended in Maryland more than a year after his suspension in the District of Columbia ended, we took into consideration mitigating factors. We opined:

> *If an attorney who is suspended in another State promptly notifies Maryland Bar Counsel of that suspension, as required by [Md.] Rule 16–773(a), and promptly ceases the practice of law in Maryland during the period of that suspension,* any corresponding, reciprocal period of suspension ordered by us, *ordinarily,* should be concurrent with that imposed in the other State, whether through the device of retroactive commencement of the reciprocal discipline or by terminating our suspension upon termination of the suspension to which it is reciprocal.

*Id.* at 651, 911 A.2d at 866 (emphasis added). Nonetheless, because it was unclear from the record when the attorney notified Maryland Bar Counsel of his suspension in the District of Columbia or whether he continued to practice law in Maryland thereafter, we concluded that the attorney's suspension would commence upon the issuance of the Court's opinion, through eighteen months. *Id.* at 652, 911 A.2d at 867. In the instant disciplinary matter, even if Respondent's assertion that she has not practiced law in this State for seventeen years is accurate, the record clearly demonstrates that she *never* notified Bar Counsel of her suspensions in other jurisdictions, but rather merely placed herself on inactive status in July 2015.

Respondent's argument that the Maryland Client Protection Fund informed her that reciprocal discipline reporting obligations would only arise after she reactivated her membership does not obviate her failure to do so more than a year after the Second Circuit affirmed the Grievance Committee's order of suspension in April 2014, or orders of same from other courts and state bars, all of which occurred before she entered inactive status with Maryland.

Moreover, as we noted in *Midlen,* "concurrence is not a matter of right but of our own discretion and practice, to be used when the circumstances warrant." *Id.* at 651, 911 A.2d at 866. "If the attorney delays in notifying Bar Counsel of the out-of-state suspension, or declines to cease any practice of law in Maryland, or there is any other circumstances making a concurrent suspension inappropriate, that benefit will be unavailable." *Id.* at 652, 911 A.2d at 867.

We conclude that in addition to Respondent's failure to notify Bar Counsel *at all,* her misconduct alone justifies a deviation from *nunc pro tunc* reciprocal discipline. And we are not persuaded by Respondent's argument that her failure to report to Bar Counsel was due to her inability to "litigate the reciprocal matter simultaneously in all the jurisdictions, states and bars, while at the same time faithfully meeting [her] client and family obligations and court deadlines."

Bar Counsel directs this Court's attention to our opinion in *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 773 A.2d 463 (2001), among other similar cases, which stands for the proposition that disbarment is ordinarily the sanction for intentional dishonest conduct. In *Vanderlinde,* the attorney, while working outside of the legal profession, "embezzled, stole, [or] misappropriated" $3,880.67 from her then-employer and used the proceeds for her own purposes, even after she resigned and accepted a legal position with a law firm. *Id.* at 381, 773 A.2d at 465.

The attorney attributed her misconduct to the pressures of her life and depression she was experiencing during that time. *Id.,* 773 A.2d at 466. Nonetheless, we concluded that the circumstances presented in that case were not "so compelling," as to overcome the attorney's misconduct and violations of the MLRPC, thereby warranting the most severe sanction of disbarment. *Id.* at 414, 773 A.2d at 485. We explained:

[I]n cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as 'compelling extenuating circumstances,' anything less than the most serious and utterly debilitating

mental or physical health conditions, arising from any source that is the 'root cause' of the misconduct *and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the [MLRPC]. Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of stealing, dishonesty, fraudulent conduct, the intentional misappropriation of funds or other serious criminal conduct, whether occurring in the practice of law, or otherwise.

*Id.* at 413–14, 773 A.2d at 485.

In justifying the sanction of disbarment, we reasoned, "[u]nlike matters relating to competency, diligence[,] and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character." *Id.* at 418, 773 A.2d at 488. It is for these reasons, as well as this Court's interest in protecting the public and the integrity of the legal profession that we routinely invoke *Vanderlinde* when imposing sanctions for attorneys who engage in intentional dishonest conduct.

To further illustrate, in *Attorney Grievance Comm'n v. Byrd*, 408 Md. 449, 970 A.2d 870 (2009), the attorney knowingly made false statements to a bankruptcy court by filing false business reports under oath during the proceeding, thereby violating MLRPC 8.4(b), (c), and (d). *Id.* at 483, 970 A.2d at 889. The attorney also violated MLRPC 3.4(c), when he intentionally contravened various orders of the bankruptcy court. *Id.* at 484, 970 A.2d at 890. Acknowledging that the attorney's conduct involved intentional dishonesty without any compelling extenuating circumstances, we concluded "[o]nly the most severe sanction of disbarment will provide the protection to the public that this [attorney grievance] procedure is supposed to provide." *Id.* at 485, 970 A.2d at 890 (internal quotation marks and citation omitted). *See also Zodrow*, 419 Md. at 299–300, 305, 19 A.3d at 389, 392–93 (disbarring attorney who acted with intentional dishonesty when, absent

compelling extenuating circumstances, he failed to make pertinent disclosures to the court during his personal bankruptcy proceeding and gave false testimony during same, amongst other misrepresentations, in violation of MLRPC 3.3, 3.4, and 8.4.).

Another comparable case is *Attorney Grievance Comm'n v. Levin*, 438 Md. 211, 91 A.3d 1101 (2014). In *Levin*, the attorney made false statements to his firm regarding the number of cases he was handling, the number of legitimate bills he had sent, and his expectation of payment. *Id.* at 215, 91 A.3d at 1103–04. The attorney also misrepresented to his firm the size of his caseload and the fee amounts he expected to receive from same. *Id.* at 216, 91 A.3d at 1104.

In furtherance of those misrepresentations, the attorney created fictitious clients and drafted corresponding paperwork. *Id.* We concluded that the attorney "systematically engaged in a pattern of dishonest conduct[,]" through misrepresentations that spanned several months, "extending from communications with a colleague and personal acquaintance, to the creation of fictitious client papers." *Id.* at 231–32, 91 A.3d at 1113. As a result of the attorney's willful misrepresentations and dishonest conduct, we ordered disbarment. *Id. See also Attorney Grievance Comm'n v. McClain*, 406 Md. 1, 20–21, 956 A.2d 135, 146 (2008) (disbarring attorney for intentional dishonest conduct and systematic efforts to mislead the court).

Similar to the conduct of the attorneys' in *Vanderlinde*, *Byrd*, and *Levin*, Respondent's conduct was also "infected with fraud, deceit and dishonesty[,]" without any compelling extenuating circumstances. *See generally Zodrow*, 419 Md. at 304–05, 19 A.3d at 392 (acknowledging the common thread of intentional dishonest conduct, absent compelling extenuating circumstances in prior attorney disciplinary cases). As evidenced by the findings of the magistrate judge, Respondent engaged in knowing and systematic, intentional dishonest conduct throughout the Wolters Kluwer litigation and continued same during its aftermath.

 Nonetheless, in determining the appropriate sanction for Respondent's misconduct, we must also consider the aggravating and mitigating factors. Pursuant to Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions, this Court has recognized the following aggravating factors in attorney disciplinary cases:

(a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (j) indifference to making restitution.

*See Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 176–77, 994 A.2d 928, 945–46 (2010). This Court also recognizes the following mitigating factors:

[A]bsence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance Comm'n v. Coppola*, 419 Md. 370, 407, 19 A.3d 431, 453 (2011).

The magistrate judge acknowledged Respondent's "[r]efusal to [a]cknowledge [the] [w]rongful [n]ature of [her] [c]onduct," her "[s]ubmission of [f]alse [e]vidence, [f]alse [s]tatements, or [o]ther [d]eceptive [p]ractices during the [d]isciplinary [p]rocess," her "[b]ad [f]aith [o]bstruction of the [d]isciplinary [p]roceeding by [i]ntentionally [f]ailing to [c]omply with [r]ules

or [o]rders of the [d]isciplinary [a]gency," and her "[s]ubstantial [e]xperience in the [p]ractice of [l]aw," as aggravating factors. The magistrate judge accepted the following factors in mitigation: (1) the absence of a prior disciplinary record, (2) character and reputation testimony presented on Respondent's behalf, (3) Respondent's personal and emotional problems during the pendency of the litigation, (4) the prior public reprimand by Judge Baer for her misconduct, and (5) Respondent's mitigation statement offered to the Grievance Committee in July 2009 evidencing some remorse for her conduct.

However, such mitigation does not sufficiently obviate the serious nature of Respondent's violations of the MLRPC and the substantial aggravating factors to warrant a suspension. "Honesty is of paramount importance in the practice of law." *Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 715, 93 A.3d 262, 273 (2014) (citation omitted). Candor and truthfulness, therefore, are indispensable traits, which speaks to the heart of an attorney's fitness to practice law. *See generally id.* Respondent's repeated pattern of intentional dishonest conduct, misrepresentations, and deceit to the court and her colleagues, are contrary to these characteristics and undermine the integrity of the legal profession.

Even more troubling is Respondent's failure to present any credible explanation for her misconduct or sincere remorse for the events that transpired.[20] These facts distinguish the instant disciplinary matter from those in which this Court determined that ordering a term of suspension or a lesser sanction was justified although the attorney engaged in intentional dishonest conduct. To illustrate, in a reciprocal discipline matter, *Gordon*, 413 Md. 46, 991 A.2d 51 (2010), the attorney, while representing a client in a breach of contract claim, falsified his client's signature on documents submitted

---

**20.** Although Respondent's July 2009 submission to the Grievance Commission exhibited remorse for her conduct, during her evidentiary hearing, Respondent refused to acknowledge the wrongful nature of her conduct or hold herself accountable for what occurred. Respondent has also displayed similar behaviors during oral argument before this Court.

to the court in connection with a summary judgment matter, where the client's signature was a material issue. *Id.* at 50–51, 991 A.2d at 53.

The attorney filed subsequent pleadings with the falsified signature and concealed this fact from the court until the time of trial, when the client's testimony recounted the events that actually occurred. *Id.* at 51, 991 A.2d at 53–54. We concluded that the attorney's misrepresentations to the court were in violation of MLRPC 3.3(a)(1), 3.3(a)(4), and 8.4(c), and invoked Md. Rule 16–773(e) as a result of his intentional dishonest conduct. *Id.* at 63, 991 A.2d at 61.

Acknowledging that the sanction for the attorney's conduct could range from either suspension or disbarment, we, nonetheless ordered a forty-five day suspension. *Id.* at 62–64, 991 A.2d at 60–61. In justifying the term of suspension, we reasoned, "[Mr. Gordon] has no disciplinary record from his twenty years of practicing law, he has accepted full responsibility and expressed remorse for his actions, the misrepresentation does not appear to be part of a pattern of misconduct, and his actions were not financially self-serving." *Id.* at 64, 991 A.2d at 61. Although Respondent similarly has no prior disciplinary record, the mitigating factors presented in *Gordon,* are not present here.

 We must adhere to the primary function of disciplinary matters, which is to protect the public and maintain the integrity of the legal profession. These objectives would be best served by disbarment. Respondent has repeatedly expressed her future plan to relocate to Maryland. She currently maintains property in Maryland, and asserts that she has refused case referrals in this State in light of the pendency of the instant disciplinary matter. Taking guidance from *Vanderlinde* and its progeny, and in light of this Court's discretion in reciprocal discipline cases to impose a different sanction than that imposed in a sister jurisdiction if exceptional circumstances exist, we hold that disbarment, rather than a term of suspension, is the appropriate sanction for Respondent's misconduct. Accordingly, we order Respondent disbarred.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MD. RULE 16–761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST KRISTAN PETERS–HAMLIN.

BARBERA, C.J., ADKINS and McDONALD, JJ., dissent.

Dissenting Opinion by McDONALD, J., which BARBERA, C.J., and ADKINS, J., join.

The Respondent in this case has practiced law as a litigator for the federal government and in private practice for almost 30 years. She apparently has not been the subject of any other complaints of misconduct or sanctions except for the incident that resulted in this case. That incident occurred during a discovery dispute in a hotly contested commercial case in the United States District Court for the Southern District of New York nearly a decade ago. According to the Respondent, that complaint was made by the judge assigned to that case after she complained, to the chief judge of the court, about derogatory remarks made to her by the assigned judge.

Of course, this is a reciprocal disciplinary action and it is not our role to retry the case. And we would not want to. The evidentiary hearing in this case in the Southern District of New York took 11 days and resulted in a detailed 118–page report by the Magistrate Judge who presided at that hearing. Ultimately, the United States District Court for the Southern District of New York imposed a suspension, which triggered reciprocal disciplinary proceedings in numerous other jurisdictions. Not only does our Court reach a different result, but it is a result out of step with every other jurisdiction, including the jurisdiction in which the complaint was made and those in which hearings were conducted:

- In January 2013, the Magistrate Judge who heard all of the evidence and issued the lengthy report recommended

a *nunc pro tunc* suspension of five years that would have concluded less than three months after she issued her report.

- In April 2013, the United States District Court for the Southern District of New York, where the conduct occurred, imposed a *nunc pro tunc* suspension of seven years, which has since expired. The United States District Court for the Eastern District of New York later imposed a concurrent suspension which has also expired. In April 2015, the United States District Court for the District of Connecticut imposed what was essentially a concurrent *nunc pro tunc* suspension that effectively suspended Respondent for a week.

- The United States Court of Appeals for the District of Columbia imposed a *nunc pro tunc* suspension that expired before it was imposed and conditioned reinstatement on a showing that Respondent had been reinstated in the Southern District of New York.

- The United States Court of Appeals for the Second Circuit, although it declined to reverse the Southern District's disciplinary action when Respondent appealed, took no disciplinary action of its own.

- The State Bar of New York imposed reciprocal discipline in the form of a five-year *nunc pro tunc* suspension, which expired the month after it was imposed.

- In Connecticut, where Respondent has her practice, the court declined to impose any discipline. After conducting its own three-day hearing, the Connecticut court concluded that "even a retroactive suspension would serve no useful purpose." The court did require Respondent to report any future allegations of misconduct.

The Majority opinion is well written, but it necessarily only skims the surface of the detailed facts that make up this case. In my view, disbarment is not appropriate. I would impose discipline more in line with that recommended or imposed by the courts that received the complaint and that conducted hearings concerning the circumstances of the violations.

The discipline need not be the same, however. There is a rationale for imposing some additional discipline unique to Maryland. Although Respondent has not been practicing in Maryland, she was delinquent in reporting to Maryland authorities the suspension imposed by the Southern District of New York. But that additional discipline should not be disbarment.

Chief Judge BARBERA and Judge ADKINS have advised that they join this opinion.